[Crim. No. 9721. Second Dist., Div. Two. Apr. 5, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JUANITA COOK, Defendant and Appellant.

Alexander Fitzgerald, under appointment by the District Court of Appeal, and Fitzgerald & Davis for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was convicted in a nonjury trial of violating Penal Code, section 487, subdivision 1: grand theft. She appeals from the judgment.

On March 2, 1963, the manager of a men's clothing store in Los Angeles noticed a man leaving through the back door of the store carrying a number of suits. He followed the man out the door, saw him enter a parked car, the engine of which was racing, and then approached the man and told him to

drop the suits. The man turned to appellant who was seated behind the steering wheel and said something which the manager could not hear. The manager repeated his demand to which neither the man nor appellant responded. The manager then went to the rear of the car, removed a cloth covering the license plate and wrote down the license number.

An inventory check revealed that eight suits, valued by the manager at $29.95 apiece,[1] had been stolen.

On April 8, 1963, appellant was arrested and interrogated at the Los Angeles County Jail. Officer Beruk testified that at that time he said to appellant "we had a burglary report where a car was used. I told her the license number, particularly where this burglary had occurred, where this fellow went into the store and removed I think it was eight suits at the time. . . . I named the store and the address on Crenshaw Boulevard. She says, 'I know what you are talking about. As to the fellow's name, his address where he lives, I will not tell you.'

"I asked her if she retained any money from the suits or got any money from the suits. She said no.

"I asked her if she knew where the suits were presently. She said, 'No. I do not know where they are.'

"She said she drove her mother's car. . . . I don't recall the license number. She said she drove the car there and she drove it away . . .

"Q. When she said she drove the car over to Richman Bros., did she say she went there with this other man and she refused to give you his name? A. Yes."

Appellant contends that the prosecution did not sufficiently establish that the value of the goods stolen was in excess of $200. (Pen. Code, § 487, subd. 1.)

On cross-examination, it was brought out that the manager testifying at the preliminary hearing had fixed the value of ". . . a couple of these suits [at] . . . $29.95 . . ." He also testified that his store operated on a "mark up" basis of ". . . around 35 to 40 per cent."

█ It is well established that the value to be placed on stolen property for purposes of section 487 "is the fair market value of the property and not the value of the property to any particular individual." (*People* v. *Lizarraga*, 122 Cal.

_____

[1]The manager testified: "Q. All right. And what was the value, market value of these particular suits? A. Retail value was $29.95. Q. And there were eight suits . . .? A. That's right."

App.2d 436, 438 [264 P.2d 953]; *People* v. *Ciani,* 104 Cal.App. 596 [286 P. 459]; *People* v. *Williams,* 169 Cal.App.2d 400, 403 [337 P.2d 134].)

Witkin states the rule as follows: "Value of property is estimated in lawful money of the United States. (P.C. 678.) And classification of the offense, where value is the determining factor, depends on 'the reasonable and fair market value.' (P.C. 484.) Hence the test is what it would bring in the open market, not its special value to the owner, nor its replacement cost. [Citations.]" (1 Witkin, Cal. Crimes (1963) p. 346.)

Evidence of value is, manifestly, an element of the crime charged that should warrant the closest scrutiny by defense counsel when the items stolen may have a value dependent in large part on such factors as markup and the type of store victimized; and it would be open to appellant's counsel, if not incumbent upon him, to show, for example, that the list price being paid for similar merchandise in the vicinity was lower than the alleged price of the goods.

The policy behind the fair market value rule is well stated in *People* v. *Irrizari,* 5 N.Y.2d 142 [182 N.Y.S.2d 361, 156 N.E.2d 69], as follows (at p. 70 [156 N.E.2d]): "While cost of replacement, or value in the wholesale market, is an item to be reckoned with in fixing value in the retail market, it is obvious that neither cost nor wholesale value may be adopted as the appropriate measure where the larceny is from a department store. To accept wholesale value in such case would be to ignore the facts of economic life. Stated very simply, it is the retailer's function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced. In addition, the retailer expends money on various services—including advertising, promoting, display, and packaging. . . . When, therefore, a thief steals an article from a department store, he steals something having a market value quite different from that which it had in the hands of the wholesaler."

In the absence of evidence to the contrary, however, appellant could not expect the trier of fact to reach a result different from that reached. On appeal we have no power to question the conclusion of the court.

Appellant urges, too, that the manager of the store testified ". . . that around eight suits were stolen . . .". He did make such a statement but it was immediately followed with the testimony: "Q. And there were eight suits, were

there? A. That's right." There was no evidence that there were less than eight suits. Any conflict or ambiguity in the testimony quoted is properly resolved by the trier of fact. (*People* v. *Rice*, 29 Cal.App.2d 614, 621 [85 P.2d 215] ; *People* v. *Goss*, 193 Cal.App.2d 720, 727 [14 Cal.Rptr. 569].)

■ It appears from the record that appellant was in jail approximately one month after the theft had been committed. It is not clear whether she was arrested for the crime for which she was convicted. It is clear, however, that the interrogation heretofore outlined took place in jail, Officer Beruk doing the questioning in the presence of his partner, another officer, and after the police had traced appellant through her mother's ownership of the car. It is also clear that the police did not question appellant about any other crime. The circumstances negate the conclusion that the police were conducting an investigation of any other crime or of any unsolved crime.

The statements attributed to appellant were in their totality and context tantamount to incriminating admissions of certain elements or facts necessary to sustain a finding of guilt. Thus, when the officer described the theft, appellant stated, "I know what you are talking about. As to the fellow's name, . . . I will not tell you." Later she said she drove her mother's car; she said she drove the car there and she drove it away.

The record is silent as to whether appellant was advised of her constitutional rights to seek the advice of counsel or to remain silent or whether she effectively waived such rights. If appellant received no such advice, then it would appear that the doctrine announced in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], is applicable. However, ". . . it is possible that [appellant] waived [her] rights . . ." in this regard. The prosecution therefore, can present evidence on this aspect of the interrogation on the retrial. If no evidence acceptable to the court is presented, the statements must be excluded. (*People* v. *Modesto*, 62 Cal.2d 436, 447 [42 Cal.Rptr. 417, 398 P.2d 753].)

The judgment is reversed.

Herndon, J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 2, 1965.