[Crim. No. 14746. Fourth Dist., Div. Two. Apr. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST H. SWANSON, Defendant and Appellant.

COUNSEL

David F. Blaisdell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Peter Quon, Jr., and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Defendant pleaded guilty to one count of robbery and one count of burglary. A jury found him guilty of one count of false imprisonment. Enhancement allegations made pursuant to Penal Code sections 12022.5 and 12022.6 were found to be true. Defendant was sentenced to state prison for six years.

## FACTS

Defendant and a companion committed an armed robbery of Kirk's Jewelers in Costa Mesa. Mrs. Rhoden had the misfortune of window shopping at the store at the time of the robbery. The robbers saw her and decided to seize her. Mrs. Rhoden started to walk off but was grabbed and dragged into the store where she was placed with customers and staff already in the robbers' custody.

Defendant and his companion fled with $109 in cash plus jewelry with a retail value in excess of $130,000.

## I

### PENAL CODE SECTION 12022.6 ENHANCEMENT

■ Defendant contends his sentence was improperly enhanced pursuant to Penal Code section 12022.6. That statute provides, in part, that when a person intentionally takes property during the commission of a felony and the loss exceeds $100,000, the sentence will be enhanced by two years. Here there was testimony that the cost price to the store of the stolen jewelry was $52,000. The enhancement was imposed based upon testimony that the retail value of the jewelry was in excess of $130,000. ·

Defendant's position is that the actual acquisition cost of $52,000 should have been used to measure the loss under section 12022.6. In *People* v. *Ramirez* (1980) 109 Cal.App.3d 529 [167 Cal.Rptr.174], the court rejected the general concept that application of the enhancement should be measured by the ultimate net loss to the victim.

---

\*Before Morris, P. J., Kaufman, J., and McDaniel, J.

The cases uniformly agree that in enacting Penal Code section 12022.6, the purpose of the Legislature was to deter large-scale crime. (*People* v. *Kellett* (1982) 134 Cal.App.3d 949, 959 [185 Cal.Rptr. 1].) "The courts are, of course, bound to construe section 12022.6 in accordance with this purpose." (*Id.*) The Legislature did not intend that the application of section 12022.6 should depend upon fortuitous circumstances (see: *People* v. *Ramirez, supra,* at p. 539). Using the victim's acquisition cost would create a haphazard valuation method. For instance, substantially appreciated property would be measured by its lower original acquisition cost and property acquired by gift would have an acquisition cost of zero. Property acquired at discount would have that discount benefit passed on to the thief. There are many other potential examples which demonstrate the suspect nature of using acquisition cost to measure the value of stolen property.

The means of valuing stolen property is settled under the theft statutes. Defendant seeks to avoid these settled rules by arguing that section 12022.6 is distinct and separate from the theft statutes. There is no indication in section 12022.6 that the Legislature intended the value of property to be measured by some means other than that which is already settled in the law. The Legislature did not set forth new standards of measurement for section 12022.6. Defendant says that had the Legislature intended the fair market retail value to be used as the measure it would have said so. To the contrary, had the Legislature intended the application of valuation rules different from those well settled at the time the statute was adopted, the Legislature would have said so. The legislative silence concerning a new method of valuation implies an intent that existing rules of valuation be used. The physical separation of the theft and enhancement sections in the Penal Code is not in itself controlling. Reason dictates that settled law applies.

Penal Code section 484 defines theft. In doing so, it states: "In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, . . ." While the statute limits itself by saying it is "for the purposes of this section," no actual reason exists for applying a different test for section 12022.6 from that described in section 484.

Problems similar to the one before us have arisen in determining the value of stolen property for the purpose of distinguishing between grand theft and petty theft. In *People* v. *Tijerina* (1969) 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680], the defendant argued the evidence was insufficient to establish that the clothing he had taken from a department store was of a value in excess of $200. The evidence presented at trial was that the retail price of the property exceeded $200. Defendant contended that retail price did not establish the reasonable and fair market value of the stolen property. The Supreme Court said that "[i]n the

absence of proof, however, that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise within the meaning of sections 484 and 487. [Citation omitted.]" (At p. 45.)

In *People* v. *Cook* (1965) 233 Cal.App.2d 435 [43 Cal.Rptr. 646], the defendant stole clothing from a department store. The court said that it was well established that the value of stolen property is determined by its fair market value, not the value of the property to any particular individual. It said the test was what the property would bring in the open market, not its special value to the owner or its replacement cost. The *Cook* court quoted from a New York decision in explaining the policy behind the fair market value rule. " 'While cost of replacement, or value in the wholesale market, is an item to be reckoned with in fixing value in the retail market, it is obvious that neither cost nor wholesale value may be adopted as the appropriate measure where the larceny is from a department store. To accept wholesale value in such case would be to ignore the facts of economic life. Stated very simply, it is the retailer's function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced. In addition, the retailer expends money on various services—including advertising, promoting, display, and packaging. . . . When, therefore, a thief steals an article from a department store, he steals something having a market value quite different from that which it had in the hands of the wholesaler.' " (At p. 438.)

*People* v. *Pena* (1977) 68 Cal.App.3d 100 [135 Cal.Rptr. 602], also involved theft from a department store. The case determined that the law was well settled and correct that the value of the property was determined by the fair market value rather than the value to a particular individual. (At p. 104.)

In *People* v. *Simpson* (1938) 26 Cal.App.2d 223 [79 P.2d 119], secondhand property was stolen and the court said that the value of the property was measured by its market value rather than by the cost of replacement. (At p. 229.) In *People* v. *Lizarraga* (1953) 122 Cal.App.2d 436 [264 P.2d 953], clothing was stolen from a department store. The retail price of the stolen property was in excess of $200 but the wholesale price was less than $200. In affirming a grand theft conviction, the court applied the rule that the value of the property was established by its fair market value rather than the value of the property to any particular individual. (At p. 438.)

We can conceive of no sound reason, and defendant has offered none, why the well settled rule established by these cases should not be applied to a determination of the value of stolen property for the purpose of a Penal Code section 12022.6 enhancement. The use of different methods of valuation of stolen

property under each statute (Pen. Code, §§ 487 and 12022.6) has no logical justification. In section 12022.6 the Legislature stated no new method for determining the value of stolen property. In the absence of evidence of Legislative intent to depart from settled rules of valuation, we find the above cases controlling and dispositive in favor of imposition of the two-year enhancement. Moreover, using the uncertainties of acquisition cost could tend to detract from the Legislature's intent to deter large-scale crime.

The enhancement was properly imposed.

## II

### FALSE IMPRISONMENT

■ Defendant contends the court erred in refusing to give CALJIC No. 2.02[1] on the sufficiency of circumstantial evidence to prove specific intent. This argument is based on defendant's contention that false imprisonment is a specific intent crime.

A general criminal intent crime exists when the statutory definition of the crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence. A specific intent crime exists when the statutory definition refers to the defendant's intent to do some further act or achieve some additional consequence. (*People* v. *McDaniel* (1979) 24 Cal.3d 661, 669 [156 Cal.Rptr. 865, 597 P.2d 124].)

Penal Code section 236 defines false imprisonment as the "unlawful violation of the personal liberty of another." The definition of this criminal offense includes only a description of the particular act without any reference to an intent to do a further act or achieve a further consequence. Thus, it is a general intent crime. (*Id.*)

Defendant, alternatively, argues that even if false imprisonment is not a specific intent crime, CALJIC No. 2.02 still should have been given because it applies where an act must be done with a specific intent or *mental state*.

---

[1]CALJIC No. 2.02 provides: "The [specific intent] [or] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. But you may not find the defendant guilty of the offense charged, unless the proved circumstances not only are consistent with the theory that he had the required [specific intent] [or] [mental state] but cannot be reconciled with any other rational conclusion.

Also, if the evidence as to [any] such [specific intent] [or] [mental state] is susceptible of two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to the absence of the [specific intent] [or] [mental state], it is your duty to adopt that interpretation which points to the absence of the [specific intent] [or] [mental state]. If, on the other hand, one interpretation of the evidence as to such [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

Defendant relies on *City of Newport Beach* v. *Sasse* (1970) 9 Cal.App.3d 803 [88 Cal.Rptr. 476]. In that civil case the issue of whether false imprisonment is a general or specific intent crime was not before us and we did not decide that question. Defendant, however, relies on that portion of our decision which recites: "The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. (1 Harper & James, Torts (1956) p. 226; Rest. 2d Torts, § 35.) False imprisonment 'is the unlawful violation of the personal liberty of another.' (Pen. Code, § 236.) The Penal Code definition governs in civil as well as criminal actions. [Citations of civil cases omitted.]" (At p. 810.) Defendant says that because the *Sasse* decision uses the word "intentional" it implies that "some sort of specific intent or mental state" is required for false imprisonment and, therefore, CALJIC No. 2.02 is required. He also says that "[e]ven if specific intent is not the necessary mental state for false imprisonment, some sort of intent is necessary, as [*Sasse*] spells out."

The "mental state" contained in CALJIC No. 2.02 refers to a special mental state, analogous to a specific intent, which is an element of the criminal offense such as premeditation. (See *People* v. *Wiley* (1976) 18 Cal.3d 162, 174-176 [133 Cal.Rptr. 135, 554 P.2d 881].) No such mental state is involved in a false imprisonment charge. It is true that in describing the *tort* of false imprisonment in *Sasse* "intentional" confinement was mentioned. An intentional act, in the context of false imprisonment, means a knowing act. " 'Intentionally' is often used as synonymous with 'knowingly,' and when so used an act is intentional if the person who does it is conscious of what he is doing, and its probable consequences, without regard to the motive which induced him to act." (*People* v. *McCree* (1954) 128 Cal.App.2d 196, 202 [275 P.2d 95].) Where the defendant intends to do the proscribed act and no showing is required of an intent to do a further act or achieve a future consequence, general criminal intent is shown. (*People* v. *McDaniel, supra,* at p. 669.) Such is the case here.

Defendant has failed to demonstrate what specific intent or mental state would be required for false imprisonment beyond a general criminal intent. Defendant's contention that CALJIC No. 2.02 was required to be given to the jury is unpersuasive.

### III

#### SENTENCING

Defendant says that because of his alcohol abuse, it "would have been very helpful" had the court ordered a 90-day diagnostic study pursuant to Penal Code section 1203.03. The sentencing court denied defendant's request

for such a study. Defendant contends this was sentencing error necessitating reversal.

"Section 1203.03 provides, in pertinent part, that the trial court may order the defendant be placed in a diagnostic facility for up to 90 days. Such placement is warranted where the court concludes a diagnostic study is essential to a just disposition of the case. The trial court abuses its discretion in ruling on a particular matter only where such ruling exceeds the bounds of reason. [Citations omitted.]" (*People* v. *Harris* (1977) 73 Cal.App.3d 76, 85 [140 Cal.Rptr. 697].) The fact that a trial judge uses his discretion in a manner different from that requested or suggested, does not mean that the trial judge has abused his discretion. (*People* v. *Peace* (1980) 107 Cal.App.3d 996, 1001 [166 Cal.Rptr. 202].)

By defendant's own version, there "was considerable evidence" that defendant "had an alcohol problem." In this case the sentencing court had before it a great deal of information on the defendant's alcohol problem. Given this fact, the sentencing court did not abuse its discretion in not obtaining further information on defendant's alcoholism. (*Id.*)

There was no error in the court's exercise of its discretion.

Judgment affirmed.