[No. B071817. Second Dist., Div. Six. July 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE PABLO FERNANDEZ, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to rules 976(b) and 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of sections 3 and 4.

COUNSEL

Monica Knox, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin, Alison Braun and Karen Chappelle, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STONE (S. J.), P. J.**—Here we hold that the trial court did not have to advise the jury of its power to nullify a verdict and that the court correctly instructed that false imprisonment is a general intent crime.

Jose Pablo Fernandez appeals from a judgment following a jury's convicting him of felony false imprisonment by violence (Pen. Code,[1] §§ 236, 237) and battery with serious bodily injury (§ 243, subd. (d)) of Jose Lucero. He contends that: 1) the trial court erred in failing to instruct the jury of its power to nullify a verdict which resulted in a denial of his Sixth Amendment rights; 2) his conviction for false imprisonment must be reversed due to insufficiency of evidence and misinstruction; 3) the court erred in admitting "expert" gang evidence; and 4) certain conditions of probation should be stricken. We affirm.

FACTS

The facts resemble a scene from "West Side Story" without the music. Appellant was a passenger in a car driven by Ruben "Whispers" Juarez. Also in the car were Ramon "Munchies" Guerra, Rodrigo "Crazy Boy" Menchaca, Carlos "Chuco" Martinez, and Mike "Penguin" Escamilla. (Appellant's moniker was "Joker.") All were members of Sur Town gang. Juarez picked up April Perce and Georgina (Gina) Martinez, who were walking home from school. Jose "JoJo" Lucero, a member of Colonia gang, was walking on J Street with his girlfriend and her niece when Juarez's car drove by. Lucero yelled "Colonia," and someone in the car yelled "Sur Town." Lucero and the occupants of the car made obscene gestures and hand signs connoting their gangs to each other.

The males in Juarez's car got out and chased Lucero, who had separated from his girlfriend and her niece. Lucero had his niece's bike lock and chain.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

When he saw the males from the car running toward him, Lucero attempted to run away but was caught by appellant and pulled to the ground. He was kicked and hit repeatedly and hit in the head with the bike lock. He lost consciousness, was taken to the hospital, and later received six staples in his head and three stitches behind his ear.

Oxnard Police Officer Michael Williamson saw Lucero, called for an ambulance, and drove around the area. When he saw several Latin males running in an alley and jumping into a car, he detained them. Williamson searched the car with permission and found a bicycle lock and cable chain under some jackets. Appellant said, "He started it," "He threw a bottle at the car," and "He attacked us with a chain or a lock." Later appellant said, "I didn't jump off [get out of] the car."

## DISCUSSION

### 1. *No Violation of Sixth Amendment Right to Jury Trial*

After some hours of deliberation, the jury sent the following note to the court regarding the count of battery with serious bodily injury: "Only due to 'aiding & abetting' we find Jose Fernandez guilty of 'Battery w/ serious bodily injury.' Due to the letter of the law we must determine that the injuries incured [*sic*] were 'serious', even though our feelings don't follow this. Do we, as a jury have the option to give the lesser crime of 'Assault' even though we all agreed upon the original charge?" The court's response to the jury was short and to the point: "No."[2]

Appellant asserts that by telling the jury that it did not have the power to convict appellant of the lesser offense even though it found the

---

[2]It would have been better for the judge to have read to the jury CALJIC No. 1.00: "Ladies and Gentlemen of the Jury: [¶] You have heard all the evidence [and the arguments of the attorneys], and now it is my duty to instruct you on the law that applies to this case. [¶] [The law requires that I read the instructions to you.] [You will have these instructions in written form in the jury room to refer to during your deliberations.] [¶] You must base your decision on the facts and the law. [¶] You have two duties to perform. First, you must determine the facts from the evidence received in the trial and not from any other source. A 'fact' is something proved directly or circumstantially by the evidence [or by stipulation. A stipulation is an agreement between attorneys regarding the facts]. Second, you must apply the law that I state to you, to the facts, as you determine them, and in this way arrive at your verdict [and any finding you are instructed to include in your verdict]. [¶] You must accept and follow the law as I state it to you, whether or not you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions. [¶] You must not be influenced by pity for a defendant or by prejudice against [him] [her]. You must not be biased against the defendant because [he] [she] has been arrested for this offense, charged with a crime, or brought to trial. None of these circumstances is evidence of guilt and you must not infer or assume from any or all of them that [he] [she] is more likely to be guilty than innocent. You must not be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public

facts supported the greater offense, the court essentially coerced a guilty verdict on the greater offense, thereby violating his Sixth Amendment right to a jury trial. The court did not violate appellant's Sixth Amendment right to a jury trial nor did it "coerce" a verdict on the count charged.

Jury nullification, or the power to disregard the court's instructions and the evidence presented and return a verdict of acquittal or a lesser charge, has been the subject of eloquent praise as an historical lynchpin of democracy and also the subject of heated debate concerning its propriety in modern jurisprudence.[3] We need not decide whether ". . . the jury's power to acquit where the law may dictate otherwise is a fundamental necessity of a democratic system" (*United States* v. *Moylan* (4th Cir. 1969) 417 F.2d 1002, 1005) or "a sick doctrine that has occasional good days" (*People* v. *Dillon* (1983) 34 Cal.3d 441, 493 [194 Cal.Rptr. 390, 668 P.2d 697] (conc. opn. of Kaus, J.)). While courts and judges have struggled with, and differed over, whether a trial judge was under a duty to instruct the jury that it may disregard the law as it has been explained, no court of which we are aware, at least in modern day, has held that a judge must do so.

A jury has the "undisputed power" to acquit, even if its verdict is contrary to the law instructed upon by the court and contrary to the evidence. (*United States* v. *Moylan, supra,* 417 F.2d 1002, 1006.) This precept holds as long as courts adhere to the general verdict in criminal cases, which verdict cannot be gainsaid when it results in acquittal. (*Ibid.*) However, few states still give juries the power to judge both law and fact. Thus, while the modern doctrine of jury nullification might in practice perform similarly to the older notion that the jury is the final arbiter of the law as well as the facts, it rests on "a completely different conceptual basis," i.e, the juror's conscience rather than a different view of the law. (Christie, *Lawful Departures From Legal Rules: "Jury Nullification" and Legitimated Disobedience* (1974) 62 Cal.L.Rev. 1289, 1299.)

During the 19th century, most American courts, including the United States Supreme Court, rejected whatever precedent there was on instructing the jury on its power to nullify a verdict and chose to follow the contemporary English practice of not instructing the jury on the point and of not permitting the matter to be raised in argument to the jury. (Christie, *op. cit.*

---

opinion or public feeling. Both the People and the defendant have a right to expect that you will conscientiously consider and weigh the evidence, apply the law, and reach a just verdict regardless of the consequences."

[3]"Preservation of the right of trial by jury, and with it the right to nullify on the basis of conscience in the name of the community, are essential to a restoration of the vaunted stature the judicial system should occupy." (Scheflin, *Jury Nullification: The Right To Say No* (1972) 45 So.Cal.L.Rev. 168, 224.)

*supra*, 62 Cal.L.Rev. at p. 1297.) Recent cases by the federal courts of appeals have reaffirmed this position. (*Id.*, at pp. 1297-1298.)

"A juror's duty 'includes the obligation to follow the instructions of the court . . . .' " (*People* v. *Hill* (1992) 3 Cal.App.4th 16, 47 [4 Cal.Rptr.2d 258]; *People* v. *Daniels* (1991) 52 Cal.3d 815, 865 [277 Cal.Rptr. 122, 802 P.2d 906].) As recognized in federal cases such as *United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, 1133-1134 [154 App.D.C. 76], to give every juror the option of disregarding with impunity any law personally judged to be morally untenable is akin to telling all drivers to drive as fast as they think appropriate without posting a limit as a point of departure. It risks, if not chaos, at least caprice. "We cannot gainsay that occasionally jurors uninstructed as to the prerogative may feel themselves compelled to the point of rigidity. The danger of the excess rigidity that may now occasionally exist is not as great as the danger of removing the boundaries of constraint provided by the announced rules." (*Id.*, at p. 1135, fn. omitted.)

Jurors who believe the law too strict or unfair have redress through their elected representatives to bring about change. True, the individual case may not benefit from such a move, but society will. "It is one thing for a juror to know that the law condemns, but he has a factual power of lenity. To tell him expressly of a nullification prerogative, however, is to inform him, in effect, that it is he who fashions the rule that condemns. That is an overwhelming responsibility, an extreme burden for the jurors' psyche. And it is not inappropriate to add that a juror called upon for an involuntary public service is entitled to the protection, when he takes action that he knows is right, but also knows is unpopular, either in the community at large or in his own particular grouping, that he can fairly put it to friends and neighbors that he was merely following the instructions of the court." (*United States* v. *Dougherty, supra*, 473 F.2d 1113, 1136; see also *United States* v. *Wiley* (8th Cir. 1974) 503 F.2d 106, 107.)

We note that Justice Kaus, in his concurring opinion in *People* v. *Dillon, supra*, 34 Cal.3d 441, 490-493, believed that when a jury asks "whether it could put its assessment of defendant's culpability into effect," the court should answer " 'yes.' " This view, however, was not shared by a majority of his colleagues. The jury here was instructed that assault was a lesser included offense. It could have found that the prosecution had not proved all the elements of the greater offense beyond a reasonable doubt. Similarly, the trial court simply could have told the jury to reread the instructions given instead of giving the response it did. However, the court did not err in refusing to tell the jury that if it had found unanimously that appellant was guilty of the greater offense, it could nonetheless return a verdict of guilty of

the lesser offense instead. Such a response would have been tantamount to telling the jurors to let their emotions govern their decision and to disregard the law.

### 2. *Instructions and Evidence on False Imprisonment Sufficient*

■ Appellant asserts that the evidence is insufficient to support the conviction of false imprisonment by violence and that the court should have instructed on specific intent. There was no error. The court instructed the jury with CALJIC No. 9.60.[4] That instruction sets forth a correct statement of the law.

The court also instructed on the concurrence of act and general criminal intent. (CALJIC No. 3.30 (5th ed. 1988).) Appellant asserts that *People* v. *Agnew* (1940) 16 Cal.2d 655 [107 P.2d 601], and *People* v. *Haney* (1977) 75 Cal.App.3d 308 [142 Cal.Rptr. 186], held that false imprisonment requires the intent to cause the confinement of another person, thus requiring a specific intent, and that cases holding that false imprisonment is a general intent crime are wrongly decided. He then parades a list of horribles that could occur if all that be necessary is that a defendant do an act that ultimately results in someone's confinement or curtailment of freedom to move.

We agree with the conclusions in *People* v. *Swanson* (1983) 142 Cal.App.3d 104, 109 [190 Cal.Rptr. 768], and *People* v. *Olivencia* (1988) 204 Cal.App.3d 1391, 1397-1398 [251 Cal.Rptr. 880], that false imprisonment is a general intent crime. "A general criminal intent crime exists when the statutory definition of the crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence. A specific intent crime exists when the statutory definition refers to the defendant's intent to do some further act or achieve some additional consequence." (*People* v. *Swanson, supra,* at p. 109.)

---

[4]CALJIC No. 9.60 states in pertinent part: "Every person who by violence or menace violates the liberty of another person by intentionally and unlawfully restraining, confining or detaining such other person and compelling such person to stay or go somewhere without [his] [her] consent, is guilty of the crime of false imprisonment by violence or menace in violation of Penal Code Section [236]. [¶] Violence means the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint. [¶] Menace means a threat of harm express or implied by word or act. [¶] [False imprisonment does not require that there be confinement in a jail or prison.] [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A person intentionally and unlawfully, violated the liberty of another person by restraining, confining or detaining that person, compelling [him] to stay or go somewhere without [his] consent; and [¶] 2. Such act was done by violence or menace."

False imprisonment is defined as "the unlawful violation of the personal liberty of another." (§ 236.) If it is effected by violence, menace, fraud, or deceit, the crime is a felony. (§ 237; *People* v. *Olivencia, supra,* 204 Cal.App.3d 1391, 1398.) Defendants in both *Swanson* and *Olivencia* made similar arguments that even if false imprisonment is not a specific intent crime, CALJIC No. 2.02 should be given because a certain mental state or intent, i.e., the intent to confine, is necessary. We follow those courts in rejecting these arguments. The essential element of false imprisonment, be it misdemeanor or felony, is restraint of the person.

" ' . . . ". . . Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both. . . ." ' " (*People* v. *Zilbauer* (1955) 44 Cal.2d 43, 51 [279 P.2d 534], quoting *People* v. *Agnew, supra,* 16 Cal.2d 655, 659; see also *People* v. *Riddle* (1987) 189 Cal.App.3d 222, 228 [234 Cal.Rptr. 369].) Since the definition of false imprisonment includes only a description of the particular act without any reference to an intent to do a further act or achieve a further consequence, it is a general intent crime. (*People* v. *Olivencia, supra,* 204 Cal.App.3d 1391, 1398; *People* v. *Swanson, supra,* 142 Cal.App.3d 104, 109.)

Neither *People* v. *Agnew, supra,* 16 Cal.2d 655, nor *People* v. *Haney, supra,* 75 Cal.App.3d 308, is persuasive authority to the contrary. In *Agnew, supra,* the issue was not one of the requisite intent, but whether there was sufficient evidence to sustain the conviction where the defendant made a so-called citizen's arrest and caused officers to detain and book a person into the police station. The California Supreme Court quoted a discussion in 22 American Jurisprudence at page 359 which contained the following language: " ' . . . If an act is done with the intention of causing the confinement of the person actually confined or of another and such act is a substantial factor in bringing about a confinement, it is immaterial whether the act directly or indirectly causes the confinement.' " (16 Cal.2d at pp. 659-660.)

*People* v. *Haney, supra,* 75 Cal.App.3d 308, 313, concerned the issue of whether the court's failure to instruct on the elements of the crime of false imprisonment was reversible error. In defining what the court should have instructed the jury, *Haney* cited *People* v. *Agnew, supra,* 16 Cal.2d 655, 659, 660, for the proposition that "[t]he acts must be done, the words must be said, with the intent of causing the confinement." (75 Cal.App.3d at p. 313.)

However, the precise nature of the requisite criminal intent was not at issue in *Haney*. (*People* v. *Olivencia, supra,* 204 Cal.App.3d 1391, 1399.) Moreover, as *Olivencia* concluded, *Haney* misread the pertinent authority in stating that the acts must be done with the intent of causing the confinement. (*Ibid.*) "Given *Agnew's* factual context, this statement means at most that an intent to confine is required where the defendant *indirectly* causes the confinement. It has no application where, as in this case, the defendants have directly caused the confinement of the victim." (*Ibid.*)

■ Additionally, as explained in *People* v. *Swanson, supra,* 142 Cal.App.3d 104, 110, "intentionally" is often used synonymously with "knowingly," i.e., that the person doing the act is conscious of what he or she is doing, and its probable consequences. Thus, if the defendant intends to do the proscribed act and no showing is required of an intent to do a further act or achieve a future consequence, the defendant has shown general criminal intent. (*Ibid.*) We also note, as did *People* v. *Olivencia, supra,* 204 Cal.App.3d 1391, 1399, that the California Supreme Court in *People* v. *Zilbauer, supra,* 44 Cal.2d 43, 51, cited *People* v. *Agnew, supra,* 16 Cal.2d 655, for the definition of false imprisonment in a direct confinement case, but omitted the language regarding intent.

■ Appellant asserts that the statutory definition of the offense envisions and presupposes some physical parameters to the restraint, i.e., confinement in some type of enclosed space. We disagree. As stated in *People* v. *Agnew, supra,* 16 Cal.2d 655, 659-660, any exercise of force, express or implied, by which the other person is deprived of liberty or freedom of movement, or " '. . . is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. . . .' " (See also *People* v. *Grant* (1992) 8 Cal.App.4th 1105, 1112 [10 Cal.Rptr.2d 828].)

*People* v. *Riddle, supra,* 189 Cal.App.3d 222, 229-230, is illustrative. There the reviewing court held that the defendant's act of ordering a young woman's parents out of their trailer at gunpoint constituted false imprisonment because "[t]he personal liberty of each of Theresa's parents was unlawfully restrained when Riddle accomplished their removal from the trailer home under threat of the firearm. Though the restraint was short in time and distance, the restraint was real." Here appellant restrained Lucero long enough for Lucero to suffer over 20 kicks. The restraint was not, as appellant argues, part of the battery. Appellant and the others could have hit Lucero without holding him down.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied July 27, 1994, and appellant's petition for review by the Supreme Court was denied October 13, 1994.

---

*See footnote, *ante*, page 710.