Filed 8/26/14  P. v. Cooper CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS ERWIN COOPER,<br><br>Defendant and Appellant. | F066382<br><br>(Super. Ct. No. 12CM2309)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Leanne Le Mon and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Douglas Erwin Cooper was charged with forcible sexual penetration (Pen. Code,[1] § 289, subd. (a)(1)(A); count 1), felony false imprisonment (§ 236; counts 2 & 6), assault with intent to commit forcible sexual penetration (§ 220, subd. (a); counts 3 & 7), felony sexual battery (§ 243.4, subd. (a); count 4), attempt to commit forcible sexual penetration (§§ 289, subd. (a)(1), 664; count 5), and misdemeanor sexual battery (§ 243.4, subd. (e)(1); counts 8 & 9).[2] On November 1, 2012, the jury convicted him on all counts. On December 12, 2012, the trial court sentenced defendant to 28 years in prison on counts 1 and 7[3] and 149 days in jail on counts 8 and 9.[4] It stayed execution of punishment on counts 2 through 6.

On appeal, defendant contends: (1) the evidence did not support his convictions on counts 2 and 6 for felony false imprisonment; (2) the trial court failed to modify Judicial Council of California Criminal Jury Instructions (CALCRIM) No. 1240 for felony false imprisonment; (3) the court erroneously imposed upper-term sentences on counts 1 and 7; and (4) the court failed to stay execution of punishment on count 8.[5] We conclude: (1) substantial evidence supported defendant's convictions on counts 2 and 6; (2) the court properly instructed the jury on the elements of felony false imprisonment; (3) the court did not abuse its discretion when it imposed upper-term sentences on counts 1 and 7; and (4) the court was required to stay execution of punishment on count 8. The judgment shall be modified to reflect this stay and, in all other respects, is affirmed.

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] With regard to counts 1 through 7, defendant admitted a prior conviction of a serious and/or violent felony.

[3] The court imposed doubled upper-term sentences of 16 years on count 1 and 12 years on count 7. (See §§ 220, subd. (a)(1), 289, subd. (a)(1)(A), 667, & 1170.12.)

[4] The court awarded 149 days of credit for time served in custody.

[5] Defendant does not raise any issues relating to count 9.

## STATEMENT OF FACTS

### I.     Prosecution case-in-chief.

a.  *Nicole S.*[6] (counts 1 through 4)

On June 19, 2012, Nicole and her friends were at a beach along Kings River in Laton, California. Defendant, who was driving a jet ski nearby, stopped, and asked, "[w]ho wants a ride." One of Nicole's male companions asked for a ride. After they returned, Nicole did not want to go for a ride, but "everyone [said] … go, go" and defendant said, "yeah, come on," so Nicole got on the jet ski with defendant. Defendant had Nicole ride in front of him. Defendant's hands were on the handlebars; the handlebars included the throttle. The two headed down the river. When they reached a fork in the river, defendant tried to steer to the left, but Nicole took hold of the handlebars and steered to the right. By this time, she smelled alcohol on defendant's breath. Defendant pulled closer to Nicole, stated he was drunk, touched her waist, and asked, "What are you going to do for me?" She answered, "What do you mean what am I going to do for you? You just gave him a ride, what did he do for you?" Defendant replied, "Well, you're a bitch, what are you going to do for me?"

Defendant and Nicole came to a weir located approximately three miles away from the beach. Defendant turned off the jet ski and groped Nicole's breasts, midsection, and buttocks. Nicole asked him what he was doing, and told him to stop. Defendant became increasingly "aggressive" and "scary" and Nicole fought him. Nicole turned on the jet ski and attempted to maneuver the vehicle to get back to her friends. While doing so, defendant kissed her neck, placed his right hand inside her bikini bottom, and inserted a finger into her vagina. Nicole continued to resist defendant as she drove the jet ski back

---

**6**     Certain persons are identified by an abbreviated name in accordance with our Supreme Court's policy regarding protective nondisclosure of identity. No disrespect is intended.

to the beach. When they arrived, she disembarked and cried. She threw dirt at defendant. When asked why, she said, "because he[ was] dirt." When defendant was questioned by Nicole's friends, he remarked, "Wasn't that why I gave her a ride?"

> b. *Carli R.* (counts 5 through 8)

In June 2012, Carli and her girlfriends were floating down Kings River when they saw defendant driving his jet ski. She asked him for a ride because she "thought it would be fun." Defendant and Carli headed north at a rate of roughly 10 to 15 miles per hour and reached an isolated part of the river with which she was unfamiliar. She "felt uncomfortable" because they "were gone for too long." Carli asked defendant to switch positions so that she could sit in front and be able to drive "just in case." After the two traded seats, he placed his hands on her inner thighs. Carli told defendant to stop and removed his hands. He again placed his hands on her inner thighs and then rubbed her crotch on the outside of her bathing suit for "[a] good amount of time" and "[l]ong enough for [her] to get scared." Carli eventually drove the jet ski back to her friends. Meanwhile, defendant instructed her to explain "[they] were gone so long because [they] went such a far distance." After they returned, Carli gestured to her friends not to ride with him.

## II.    Defense case-in-chief.

Defendant testified. Regarding Nicole, he stated she, and one of her male friends asked him for a ride on his jet ski. He gave a ride to the friend first and then to Nicole. She sat in front, turned on the jet ski, and drove. By this time, defendant had consumed approximately eight cans of beer. He fell asleep during the ride, but awakened due to lower back pain. Defendant contemplated "what kind of girl" Nicole was and placed his hand on her lap. She removed his hand and said, "No." Defendant responded, "Oh, what, I get nothing for the ride?" Later, when he "was going to fall off" the jet ski, he held on to Nicole's midsection. Defendant only "felt the top of her waistband from her

4.

bikini bottom." When the two returned to the beach, Nicole "jumped off the jet ski and act[ed] like she was molested."

Regarding Carli, he stated she asked him for a ride on his jet ski because she was tired and he obliged. The pair headed upstream to see "why the water [was] running so slow." At no point did Carli complain about the duration of this trip, which was approximately 20 minutes. Later, when she asked to drive the jet ski, defendant pulled over and switched seats. He then put his left hand on Carli's lap "to see what kind of gal" she was. She "brushed it off and that was it." Defendant and Carli returned to her friends without any further incident.

## DISCUSSION

### I. Substantial evidence supported defendant's convictions on counts 2 and 6 for felony false imprisonment.

"When an appellant challenges the sufficiency of the evidence, the reviewing court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1511 (*Aispuro*); accord *People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis what[so]ever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin*, *supra*, at p. 331.) "For evidence to be 'substantial' it must be of ponderable legal significance, reasonable in nature, credible and of solid value." (*Aispuro*, *supra*, at p. 1511; accord *People v. Johnson* (1980) 26 Cal.3d 557, 576.) "Although we must ensure the evidence is reasonable, credible, and of solid value, … it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "Thus, if the verdict is supported by substantial

5.

evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*Ibid.*)

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236; see *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1123 ["'The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.'"].)[7] "'In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison.'" (*People v. Agnew* (1940) 16 Cal.2d 655, 659; see *People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1357 ["False imprisonment does not require 'confinement in some type of enclosed space.' [Citation.]"].) "'Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both.'" (*People v. Agnew*, *supra*, at pp. 659-660; accord *People v. Grant* (1992) 8 Cal.App.4th 1105, 1112.) "[F]alse imprisonment, whether misdemeanor or felony, is a general intent crime …." (*People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1397.)

"False imprisonment is a misdemeanor unless it is 'effected by violence, menace, fraud, or deceit,' in which case it is a felony." (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490, quoting § 237.) "Menace is defined as 'a verbal or physical threat of harm. The threat of harm may be express or implied.'" (*Aispuro*, *supra*, 157 Cal.App.4th at p. 1512.) "An express or implied threat of harm does not require the use

---

[7]    The Supreme Court has held that the definitions of the crime and tort are identical. (See, e.g., *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 372; *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715.)

of a deadly weapon or an express verbal threat to do additional harm. Threats can be exhibited in a myriad number of ways, verbally and by conduct." (*Id.* at p. 1513.)

We conclude substantial evidence supported the conviction on count 2. Viewed in the light most favorable to the verdict, the record demonstrated that defendant controlled the jet ski as he and Nicole traveled down Kings River for about three miles. Before they reached the weir, he drew closer to her, touched her, and insinuated that he expected her to engage in lascivious conduct in exchange for the ride. When Nicole objected, defendant called her a "bitch" and again suggested that he was owed sexual gratification. Thereafter, he brought her to the weir, turned off the jet ski, and sexually abused her. Based on the evidence, a reasonable trier of fact could have found, beyond a reasonable doubt, that defendant intentionally restrained Nicole against her will by menace. Although Nicole voluntarily boarded the jet ski at the outset, she did not wish to remain after defendant revealed his lewd intention. She could not, however, immediately dismount the moving vehicle without exposing herself to injury. Moreover, defendant only stopped and turned off the jet ski once he and Nicole reached a secluded area of the river where she was separated from her friends and his implicit threat—he would not bring her back until he got what he wanted—became more tangible. A reasonable trier of fact also could have inferred from defendant's conduct his general intent to commit the offense. (See *People v. Martinez* (1977) 75 Cal.App.3d 859, 863-864.)

For analogous reasons, we conclude substantial evidence supported defendant's conviction on count 6. Defendant transported Carli upstream for 20 minutes to a remote part of the river with which she was unfamiliar and where she was separated from her friends. Carli, who was uncomfortable by this point, wanted to return and switched positions with defendant to have easier access to the handlebars. Before she could act, however, he fondled her for an appreciable length of time. Based on these circumstances, including defendant's conduct and Carli's fear during the ordeal (see *People v. Islas* (2012) 210 Cal.App.4th 116, 127 ["[A] jury properly may consider a victim's fear in

7.

determining whether the defendant expressly or impliedly threatened harm."]), a reasonable trier of fact could have found, beyond a reasonable doubt, that defendant intentionally deprived Carli of her liberty by menace.

**II.  The trial court properly instructed the jury on the elements of felony false imprisonment.**

a.  *Background*

After close of evidence, the trial court read CALCRIM No. 1240 to the jury:

> "The defendant is charged in Count 2 and 6 with false imprisonment by violence or menace in violation of Penal Code Section 237(a)[.] [¶] To prove that the defendant is guilty of this crime, the People must prove that:

> "1.  The defendant intentionally restrained, or confined, or detained someone by violence or menace; and

> "2.  The defendant made the other person stay or go somewhere against the person's will.

> "Violence means using physical force that is greater than the force reasonably necessary to restrain someone. [¶] Menace means a verbal or physical threat of harm. The threat of harm may be express or implied.

> "An act is done against a person's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily and know the nature of the act."

b.  *Analysis*

"'It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case. [Citations.] At a minimum, it is the court's duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination in conformity with the applicable law. [Citation.]'" (*People v. Haney* (1977) 75 Cal.App.3d 308, 312

(*Haney*).) "'We presume jurors "generally understand and follow instructions."'" [Citation.]" (*People v. Jackson* (2014) 58 Cal.4th 724, 767.)

As to a charge of false imprisonment, the "[i]nstructions essential to the jury's proper evaluation of the facts before them would encompass the following: [t]he crime of false imprisonment, whether misdemeanor or felony, requires for its commission some intended confinement or restraint of the person. It is not necessary there be confinement in jail or prison. Any exercise of force or express or implied threat of force by which in fact the person is restrained from his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is such imprisonment. The imprisonment may be committed by acts or words merely operating on the will of the individual and/or personal violence. The acts must be done, the words must be said, with the intent of causing the confinement. [Citations.]" (*Haney*, *supra*, 75 Cal.App.3d at p. 313.) "If the imprisonment is effected without the use of violence, menace, fraud or deceit, it is a misdemeanor. The presence of one or more of these elements elevates the false imprisonment to a felony." (*Ibid.*)

Here, the trial court read CALCRIM No. 1240 verbatim. (See Cal. Rules of Court, rule 2.1050(e) [use of Judicial Council jury instructions "strongly encouraged" and "recommended"].) This pattern instruction incorporates the "primary element of … unlawful restraint of another's liberty" (*Haney*, *supra*, 75 Cal.App.3d at p. 313) and "focuses on the use of violence or menace to restrain the victim" (Com. to CALCRIM No. 1240 (Spring 2014 ed.) p. 1117; cf. Use Note to California Jury Instructions-- Criminal (CALJIC) No. 9.60 (Spring 2014 ed.) p. 976). That CALCRIM No. 1240, by default, omits the elements of "fraud" and "deceit" does not render the instruction erroneous. (Cf. *People v. Fernandez* (1994) 26 Cal.App.4th 710, 716, fn.4 [approving substance of CALJIC No. 9.60 notwithstanding exclusion of "fraud" and "deceit" elements].) These disjunctive elements (see § 237; *Haney*, *supra*, at p. 313), which are rarely found in felony false imprisonment cases (see com. to CALCRIM No. 1240, *supra*,

9.

p. 1117), were unnecessary in the instant case given that substantial evidence supported defendant's convictions for felony false imprisonment by menace (*ante*, at pp. 5-8).[8] Thus, we find the court properly instructed the jury on the elements of felony false imprisonment "'necessary for a proper determination.'" (*Haney*, *supra*, at p. 312.)

Defendant claims the court should have modified CALCRIM No. 1240, but does not establish that he asked for such an instruction below. "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218; see *People v. Lawrence* (2009) 177 Cal.App.4th 547, 553-554, fn. 11 [distinguishing between claim that challenged instructions not "'correct in law'" and claim that such instructions were "merely incomplete"].) Therefore, defendant forfeited the issue.

### III.   The trial court did not abuse its discretion when it imposed upper-term sentences on counts 1 and 7.

a. *Background*

At the sentencing hearing, the trial court imposed the upper-term sentences on count 1 for forcible sexual penetration and count 7 for assault with intent to commit forcible sexual penetration. (*Ante*, fn. 3.) The court cited the following circumstances in aggravation:

> "The circumstances in aggravation include that the victims were vulnerable in that [defendant] lured them away from friends, took them to

---

**8**     Furthermore, the record before us did not involve the type of conduct needed to support a charge of felony false imprisonment by fraud and/or deceit. (Cf. *People v. Rios* (1986) 177 Cal.App.3d 445 [absent evidence of violence or menace, conviction for felony false imprisonment upheld in consideration of evidence that the defendant picked up the victim from her home, told the victim's mother they would return the following day, brought the victim to Mexico, and lied to the victim's mother and authorities about the victim's whereabouts for a four-year period].)

portions of the river where they could not readily escape, and were traveling on a jet ski where escape would cause injury.  [¶] … [¶]

"The other circumstances in … aggravation [are] that the defendant was convicted for other crimes for which consecutive sentences could be imposed and for which concurrent sentences are being imposed; [and] the defendant has engaged in violent conduct which indicates a serious danger to society."

Defendant asserts the victims were not particularly vulnerable.  He argues victim vulnerability "tends to be found when the victim is younger or has a relationship with the perpetrator in which the perpetrator is dominant or has particular influence over the victim."  He also argues he was not, as the trial court stated, convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent terms were being imposed.  Additionally, he asserts he was not "engaged in violent conduct which indicates a serious danger to society."

b.  *Analysis*

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (§ 1170, subd. (b); accord Cal. Rules of Court, rule 4.433(c)(1).)  This choice is "subject to review for abuse of discretion."  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'  [Citation.]"  (*Ibid.*)

"[A] trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made."  (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196; accord *People v. Sandoval*, *supra*, 41 Cal.4th at p. 848; see, e.g., Cal. Rules of Court, rule 4.421.)  "A single factor in aggravation is a sufficient basis for a sentencing choice." (*People v. Castellano* (1983) 140 Cal.App.3d 608, 615.)

We conclude the trial court did not abuse its discretion when it imposed upper-term sentences on counts 1 and 7, a decision largely based on the aggravating factor of the victims being "particularly vulnerable." (Cal. Rules of Court, rule 4.421(a)(3).) Contrary to defendant's assertion, being "particularly vulnerable" is not limited to victims who are young or victims who have a preexisting subordinate relationship to the perpetrator. "'"[P]articular vulnerability" is determined in light of the "total milieu in which the commission of the crime occurred ...." [Citation.]' [Citation.]" (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1321.) A victim who is isolated and separated from others who could help is particularly vulnerable. (*People v. Ramos* (1980) 106 Cal.App.3d 591, 607 [victim alone in single room trailer particularly vulnerable due to isolation and not being "subject to help from individuals who were passing by"], disapproved on another ground in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16, 356; *People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 601 [rape victim particularly vulnerable where she is isolated inside the defendant's residence].)

Here, the record showed defendant took steps to separate Nicole and Carli from their respective groups and bring them to remote and isolated locations where he was able to commit the offenses without hindrance. We do not find the trial court acted in an arbitrary or capricious manner when it found these facts to constitute a circumstance in aggravation.[9]

## IV. The trial court was required to stay execution of punishment on count 8 pursuant to section 654.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct." (*People v. Reed* (2006) 38 Cal.4th 1224, 1226.) "An act or omission that is punishable in different ways by different

[9] Because this single aggravating factor constituted a sufficient basis for the trial court's sentencing choice (see *People v. Castellano*, *supra*, 140 Cal.App.3d at p. 615), we need not discuss the other factors provided (*ante*, at p. 11).

12.

provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).)

We find, and the Attorney General agrees, the crimes of assault with intent to commit forcible sexual penetration (count 7) and misdemeanor sexual battery (count 8) arose out of the same act or course of conduct. For this reason, the 149-day jail sentence on count 8 should have been and shall be stayed.

## DISPOSITION

The judgment is modified to provide that the sentence on count 8 is stayed pursuant to section 654. As so modified, the judgment is affirmed. The trial court is directed to cause to be prepared an amended abstract of judgment reflecting said modification and to transmit certified copies thereof to the appropriate authorities.

_____
DETJEN, J.

WE CONCUR:

_____
GOMES, Acting P.J.

_____
KANE, J.

13.