[No. S066106. May 7, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ARASHEIK WESLEY WILLIAMS, Defendant and Appellant.

## Counsel

Barry P. Helft, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—A juror in this criminal case expressly refused to follow the trial court's instructions regarding the crime of unlawful sexual intercourse with a minor, because the juror disagreed with the law criminalizing such behavior. The trial court dismissed the juror and replaced him with an alternate juror. On appeal following conviction, defendant claims the juror should not have been discharged, because the juror's refusal to follow the law was proper under the concept of "jury nullification." The Court of Appeal rejected that contention and affirmed the judgment of conviction. We agree with the Court of Appeal and affirm the judgment.

### I

Defendant Arasheik Wesley Williams was charged in an 11-count information with committing the offenses of false imprisonment (Pen. Code, § 236),[1] assault with a deadly weapon or by force likely to produce great bodily injury (§ 245, subd. (a)(1)), forcible rape (§ 261, subd. (a)(2)), battery with serious bodily injury (§§ 242, 243, subd. (d)), and torture (§ 206) against his former girlfriend, Jennifer B., during three incidents occurring on December 31, 1994, January 1, 1995, and January 9, 1995. The information further alleged that defendant used a deadly or dangerous weapon in the commission of five of the counts (§ 12022, subd. (b)(1)), used a deadly weapon in the commission of one of the charged rapes (§ 12022.3, subd. (a)), and inflicted great bodily injury on the victim in the commission of another of the counts (§ 12022.7, subd. (a)).

As to the December 31 incident, defendant was convicted of the misdemeanor offense of unlawful sexual intercourse with a minor (§ 261.5, subd. (b)) as a necessarily included offense of rape. As to the January 1 incident, defendant was acquitted of all charges. As to the January 9 incident, defendant was convicted of assault by force likely to produce great bodily injury, false imprisonment, and torture. The jury found true the allegation that he inflicted great bodily injury on the victim, and found each of the remaining allegations not true.

Defendant was sentenced to the middle term of three years in prison on the conviction of assault by force likely to produce great bodily injury, plus a sentence enhancement of three years for inflicting great bodily injury.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

Sentences on the false imprisonment and torture convictions were stayed, and defendant was sentenced to a concurrent term of six months for unlawful sexual intercourse with a minor, for a total term of six years in prison.

The Court of Appeal affirmed the judgment of conviction.

## II

As noted above, the charges in this case arose from three incidents involving defendant and his former girlfriend. Only the first incident is relevant to the issue upon which we granted review.

At the time of the December 31, 1994, incident, defendant was 18 years of age and his girlfriend, Jennifer B., was 16 years of age. Both defendant and Jennifer B. testified that they engaged in sexual intercourse on that date; however, defendant testified it was consensual, and Jennifer B. testified defendant forced her to engage in intercourse by threatening her with knives.

At trial, prior to the attorneys' closing arguments, the court indicated that it would instruct the jury that it could convict defendant of unlawful sexual intercourse with a minor as a lesser offense included within the charged offense of rape. Defendant's objection was overruled.

During argument, defense counsel made the following statement: "Something else has happened in this case . . . . They have added misdemeanors to all the charges you heard. . . . They added statutory rape suddenly without notice or preparation. Now, what is the role of a juror on the statutory misdemeanor rape? Your role as a juror is to fairly apply the law. That's why we don't want computers. We need the input of fair people, [defendant]'s peers, if you will. Law as you know is not uniformly applied. I can see five cars speeding and the highway patrol is not likely to arrest any of the five. Mores, custom[s] change. Times change. And the law must be applied fairly. So if the law is not being applied fairly, that's why you need fair jurors. Now there is a case called *Duncan versus Alaska*. It's the Supreme Court of the United States, 391 U.S. 145, 88 Supreme Court 1444. And I would like to read to you just two lines: 'The guarantee of jury trial in the federal and state Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the government.' And further on in the case at the end are the lovely words,

'A jury may, at times, afford a higher justice by refusing to enforce harsh laws.' Please understand."[2]

During the first day of deliberations, the trial court received a message from the jury foreperson indicating that Juror No. 10 "refuses to adhere to Judge's instruction to uphold the law in regard to rape and statutory rape, crime Section 261.5(b) of the Penal Code. He believes the law is wrong and, therefore, will not hear any discussions."[3] In response, the trial court questioned Juror No. 10 outside the presence of the other jurors:

"THE COURT: [I]t's been reported to me that you refuse to follow my instructions on the law in regard to rape and unlawful sexual intercourse, that you believe the law to be wrong and, therefore, you will not hear any discussion on that subject. Is that correct?

"[JUROR]: Pretty much, yes.

"THE COURT: All right. Are you governed by what was said during argument by counsel?

"[JUROR]: Yes.

"THE COURT: You understand that there was an improper suggestion and that it's a violation of the Rules of Professional Conduct?

"[JUROR]: No, I don't know that.

"THE COURT: All right. Well, I'm telling you that's what it was. And I would remind you too that you took an oath at the outset of the case in the

---

[2]The language quoted by defense counsel actually is from the decision in *Duncan v. Louisiana* (1968) 391 U.S. 145, 155-156 [88 S.Ct. 1444, 1450-1451, 20 L.Ed.2d 491]. The "lovely words" quoted by defense counsel appear in Justice Harlan's dissenting opinion. (*Id.* at p. 187 [88 S.Ct. at p. 1469] (dis. opn. of Harlan, J.).) Defense counsel did not quote the parenthetical phrase following those words, which raises concerns about the concept of juror nullification: "A jury may, at times, afford a higher justice by refusing to enforce harsh laws (although it necessarily does so haphazardly, raising the questions whether arbitrary enforcement of harsh laws is better than total enforcement, and whether the jury system is to be defended on the ground that jurors sometimes disobey their oaths)." (*Ibid.*)

[3]The jury foreperson brought this matter to the court's attention on the foreperson's own initiative, without prior instruction or direction by the court. The trial in the present case occurred prior to the adoption of CALJIC No. 17.41.1 (1998 new) (6th ed. 1996), which states, in part: "[S]hould it occur that any juror refuses to deliberate or expresses an intention to disregard the law . . . it is the obligation of the other jurors to immediately advise the Court of the situation." Because this instruction was not given, we have no occasion in this case to address the appropriateness or validity of this instruction. This issue is pending before us in a number of cases. (See, e.g., *People v. Engelman* (2000) 77 Cal.App.4th 1297 [92 Cal.Rptr.2d 416], review granted Apr. 26, 2000, S086462.)

following language: 'Do you and each of you understand and agree that you will well and truly try the cause now pending before this Court and a true verdict render according only to the evidence presented to you and to the instructions of the Court.' You understand that if you would not follow the instructions that have been given to you by the court that you would be violating that oath? Do you understand that?

"[JUROR]: I understand that.

"THE COURT: Are you willing to abide by the requirements of your oath?

"[JUROR]: I simply cannot see staining a man, a young man, for the rest of his life for what I believe to be a wrong reason.

"THE COURT: Well, you understand that statutory rape or unlawful sexual intercourse has been described to you as a misdemeanor? Did you follow that in the instructions?

"[JUROR]: I've been told it is a misdemeanor. I still don't see—if it were a $10 fine, I just don't see convicting a man and staining his record for the rest of his life. I think that is wrong. I'm sorry, Judge.

"THE COURT: What you're saying is not the law either concerning that particular aspect.

"[JUROR]: I'm trying as best I can, Judge. And I'm willing to follow all the rules and regulations on the entire rest of the charges, but on that particular charge, I just feel duty-bound to object.

"THE COURT: So you're not willing then to follow your oath?

"[JUROR]: That is correct."

The trial court, over defendant's objection, excused Juror No. 10, replaced him with an alternate juror, and instructed the jury to begin its deliberations anew. The next day, the jury convicted defendant of the above described charges, including unlawful sexual intercourse with a minor.

### III

A trial court's authority to discharge a juror is granted by Penal Code section 1089, which provides in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, *or upon other good cause shown to the court is found to be*

*unable to perform his duty*, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."[4] (Italics added; see also Code Civ. Proc., §§ 233, 234.) ■ "We review for abuse of discretion the trial court's determination to discharge a juror and order an alternate to serve. [Citation.] If there is any substantial evidence supporting the trial court's ruling, we will uphold it. [Citation.] We have also stated, however, that a juror's inability to perform as a juror must ' "appear in the record as a demonstrable reality." ' [Citation.]" (*People v. Marshall* (1996) 13 Cal.4th 799, 843 [55 Cal.Rptr.2d 347, 919 P.2d 1280].)

■ A juror who refuses to follow the court's instructions is "unable to perform his duty" within the meaning of Penal Code section 1089. As soon as a jury is selected, each juror must agree to render a true verdict " 'according only to the evidence presented . . . and *to the instructions of the court.*' " (Code Civ. Proc., § 232, subd. (b), italics added.)

In *People v. Collins* (1976) 17 Cal.3d 687, 690 [131 Cal.Rptr. 782, 552 P.2d 742], after the jury had begun its deliberations, a juror sent a note to the judge asking to be excused because she was " 'unable to follow the Court's instructions concerning deliberation.' " Upon being questioned by the court, she explained "that she felt more emotionally than intellectually involved and that she thought she would not be able to make a decision based on the evidence or the law." (*Ibid.*) The trial court dismissed the juror over the defendant's objection. We affirmed the resulting judgment of conviction, stating: "The extensive hearing in which the juror steadfastly maintained that she could not follow the court's instructions, that she had been upset throughout the trial and that she wanted to be excused, clearly justified a conclusion that she could not perform her duty and thus established good cause for her discharge." (*Id.* at p. 696; *People v. Sanchez* (1997) 58 Cal.App.4th 1435, 1446, fn. 2 [69 Cal.Rptr.2d 16] [trial court is "duty bound" to discharge a juror who is unable to follow the law]; *People v. Williams* (1996) 46 Cal.App.4th 1767, 1780-1781 [54 Cal.Rptr.2d 521]

---

[4] As originally enacted in 1895, Penal Code section 1089 permitted the discharge of a juror and the substitution of an alternate juror only "before the final submission of the case" and only if "a juror die[s], or become[s] ill, so as to be unable to perform his duty." (Stats. 1895, ch. 213, § 1, p. 279.) In 1933 the statute was amended to permit substitution of an alternate juror "at any time, whether before or after the final submission of the case to the jury," and expanded the basis for doing so to include "if a juror requests a discharge and good cause appears therefor." (Stats. 1933, ch. 521, § 1, pp. 1342-1343.) In 1949, the statute again was amended to permit discharge if "upon other good cause shown to the court [the juror] is found to be unable to perform his duty." (Stats. 1949, ch. 1312, § 1, p. 2300.)

[juror properly discharged because she "was unable to comprehend simple concepts, was unable to remember events during deliberations such as recent discussions or votes, and was not following the law"].)

In *People v. Daniels* (1991) 52 Cal.3d 815, 865 [277 Cal.Rptr. 122, 802 P.2d 906], this court upheld the removal of a juror for misconduct, stating: "[W]e believe the misconduct in the present case did indicate that Juror Francis was unable to perform his duty. *That duty includes the obligation to follow the instructions of the court*, and a judge may reasonably conclude that a juror who has violated instructions to refrain from discussing the case or reading newspaper accounts of the trial cannot be counted on to follow instructions in the future." (Italics added.)

Defendant contends, however, that the trial court's order denied him his right to trial by jury, because Juror No. 10 properly was exercising his alleged right to engage in juror nullification by refusing to follow the law regarding unlawful sexual intercourse with a minor. But defendant has cited no case, and we are aware of none, that holds that a trial court violates the defendant's right to a jury trial by excusing a juror who refuses to follow the law. The circumstance that, as a practical matter, the jury in a criminal case may have the ability to disregard the court's instructions in the defendant's favor without recourse by the prosecution does not diminish the trial court's authority to discharge a juror who, the court learns, is unable or unwilling to follow the court's instructions.

 It long has been recognized that, in some instances, a jury has the ability to disregard, or nullify, the law. A jury has the ability to acquit a criminal defendant against the weight of the evidence. (*Horning v. District of Columbia* (1920) 254 U.S. 135, 138 [41 S.Ct. 53, 54, 65 L.Ed. 185] ["the jury has the power to bring in a verdict in the teeth of both law and facts"], not followed on other grounds in *United States v. Gaudin* (1995) 515 U.S. 506, 520 [115 S.Ct. 2310, 2318, 132 L.Ed.2d 444]; *United States v. Schmitz* (9th Cir. 1975) 525 F.2d 793, 794 ["the jury has the inherent power to pardon one no matter how guilty"].) A jury in a criminal case may return inconsistent verdicts. (*Dunn v. United States* (1932) 284 U.S. 390, 393-394 [52 S.Ct. 189, 190-191, 76 L.Ed. 356, 80 A.L.R. 161] [the acquittal may have been the jurors' " 'assumption of a power which they had no right to exercise, but to which they were disposed through lenity' "]; *United States v. Powell* (1984) 469 U.S. 57, 63 [105 S.Ct. 471, 475, 83 L.Ed.2d 461] [recognizing " 'the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons' "]; *People v. Palmer* (2001) 24 Cal.4th 856, 863 [103 Cal.Rptr.2d 13, 15 P.3d 234].) A court may not direct a jury to enter a guilty verdict "no matter how conclusive the evidence." (*United*

*Brotherhood of Carpenters v. U.S.* (1947) 330 U.S. 395, 408 [67 S.Ct. 775, 782, 91 L.Ed. 973]; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277 [113 S.Ct. 2078, 2080, 124 L.Ed.2d 182]; *United States v. Garaway* (9th Cir. 1970) 425 F.2d 185, 185; *United States v. Hayward* (D.C. Cir. 1969) 420 F.2d 142, 144.)

General verdicts are required in criminal cases, in order to permit the jury wide latitude in reaching its verdict. (*United States v. Spock* (1st Cir. 1969) 416 F.2d 165, 182.) "A general verdict insures the input of compassion into a jury's decisional process. The rule against special verdicts and special questions in criminal cases is thus nothing more nor less than a recognition of the principle that 'the jury, as conscience of the community, must be permitted to look at more than logic.' [Citation.] In the words of one thoughtful commentator, the prohibition of special verdicts affirms the notation that '[i]n criminal cases . . . it has always been the function of the jury to apply the law, as given by the court in its charge, to the facts,' while preserving 'the power of the jury to return a verdict in the teeth of the law and the facts.' [Citation.]" (*United States v. McCracken* (5th Cir. 1974) 488 F.2d 406, 419; *United States v. Wilson* (6th Cir. 1980) 629 F.2d 439, 443 ["submitting special questions to the jury invades the province of the jury and 'infringes on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by report of its deliberations; and on its power to follow or not to follow the instructions of the court. . . .' [Citation.]" (Fn. omitted.)].)[5]

██ The jury's power to nullify the law is the consequence of a number of specific procedural protections granted criminal defendants. Chief Justice Bird, quoting Judge Learned Hand's description of jury nullification as the jury's " 'assumption of a power which they had no right to exercise, but to which they were disposed through lenity,' " observed: "This power is attributable to two unique features of criminal trials. First, a criminal jury has the right to return a general verdict which does not specify how it applied the law to the facts, or for that matter, what law was applied or what facts were found. [Citations.] [¶] Second, the constitutional double jeopardy bar prevents an appellate court from disregarding the jury's verdict in favor of the defendant and ordering a new trial on the same charge. [Citations.]" (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 599 [224 Cal.Rptr. 664, 715 P.2d 624] (conc. & dis. opn. of Bird, C. J.).) The United States Supreme Court has referred to the ability of a jury in a criminal case to nullify the law in the defendant's favor as "the unreviewable power of a jury to return a verdict of not guilty

[5]We observe that these cases refer to the ability of the jury as a whole to return a verdict that is contrary to the law or the facts. No case of which we are aware refers to an individual juror's ability to disregard the law.

for impermissible reasons." (*Harris v. Rivera* (1981) 454 U.S. 339, 346 [102 S.Ct. 460, 464, 70 L.Ed.2d 530]; see also *People v. Palmer, supra*, 24 Cal.4th 856, 863.)[6]

But the circumstance that the prosecution may be powerless to challenge a jury verdict or finding that is prompted by the jury's refusal to apply a particular law does not lessen the obligation of each juror to obey the court's instructions. More than a century ago, the United States Supreme Court recognized that jurors are required to follow the trial court's instructions. In *Sparf & Hanson v. United States* (1895) 156 U.S. 51 [15 S.Ct. 273, 39 L.Ed. 343], the trial court instructed the jury in a prosecution for murder that there was no evidence that would reduce the crime below the grade of murder. A juror asked whether the jury could return a verdict of manslaughter, and the trial court responded: "In a proper case, a verdict for manslaughter may be rendered, as the district attorney has stated, and even in this case you have the physical power to do so; but, as one of the tribunals of the country, a jury is expected to be governed by law, and the law it should receive from the court." (*Id.* at p. 62, fn. 1 [15 S.Ct. at p. 278], italics omitted.)

In that case the United States Supreme Court found no error in the trial court's instructions, or in its refusal to instruct the jury that it could return a verdict of manslaughter. The high court conducted an exhaustive review of the authority then available, which repeatedly and consistently supported a single view, aptly stated as follows: " ' "It is true, the jury may disregard the instructions of the court, and in some cases there may be no remedy. But it is still the right of the court to instruct the jury on the law, and the duty of the jury to obey the instructions." ' " (*Sparf & Hanson v. United States, supra*, 156 U.S. 51, 72 [15 S.Ct. 273, 382].) The high court concluded: "We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be." (*Id.* at p. 102 [15 S.Ct. at p. 293].)

---

[6]A jury is able to nullify the law only under certain limited circumstances. In a civil case, the jury's ability to nullify a law is sharply curtailed. The court may direct the jury in a civil case to enter a particular verdict (Code Civ. Proc., § 630; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629-630 [85 Cal.Rptr.2d 386]; cf. *People v. Flood* (1998) 18 Cal.4th 470, 491 [76 Cal.Rptr.2d 180, 957 P.2d 869] [court may not direct verdict of guilty in criminal case]), and a verdict that is not supported by substantial evidence or is contrary to the law may be vacated on a motion for new trial or the resulting judgment may be reversed on appeal. Even in a criminal prosecution, the jury's ability to nullify the law is limited when it acts to the defendant's detriment. If the evidence is "insufficient to sustain a conviction," the court "shall order the entry of a judgment of acquittal." (§ 1118.1.) A verdict convicting a defendant that is not supported by substantial evidence, or is contrary to law, may be vacated on a motion for new trial, or the resulting judgment may be reversed on appeal.

In *Taylor v. Louisiana* (1975) 419 U.S. 522, 530 [95 S.Ct. 692, 698, 42 L.Ed.2d 690], the United States Supreme Court, in holding that the fair-cross-section requirement is fundamental to the jury trial guaranteed by the Sixth Amendment, observed: "The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge." But in *Lockett v. Ohio* (1978) 438 U.S. 586, 596-597 [98 S.Ct. 2954, 2960, 57 L.Ed.2d 973], the high court clarified: "Nothing in *Taylor*, however, suggests that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge." (See also *Morgan v. Illinois* (1992) 504 U.S. 719, 730 [112 S.Ct. 2222, 2230, 119 L.Ed.2d 492] [recognizing the "trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence"].)

The high court reaffirmed this view in *United States v. Gaudin, supra,* 515 U.S. 506, 510 [115 S.Ct. 2310, 2313], which acknowledged "[t]he right to have a jury make the ultimate determination of guilt," but also recognized that "[i]n criminal cases, as in civil, . . . the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." (*Id.* at p. 513 [115 S.Ct. at p. 2315].)

This view has deep roots. In 1835, in *United States v. Battiste* (C.C.D.Mass. 1835) 24 F.Cas. 1042 (No. 14,545), Justice Story, sitting as a circuit justice, instructed the jury in a criminal case that they were the judges of the facts, but not of the law, stating: "[T]hey have the physical power to disregard the law, as laid down to them by the court. But I deny, that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions, or pleasure. On the contrary, I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the court. This is the right of every citizen; and it is his only protection. If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views, which different juries might take of it; but in case of error, there would be no remedy or redress by the injured party; for the court would not have any right to review the law as it had been settled by the jury. Indeed, it would be almost impracticable to ascertain, what the law, as settled by the jury, actually was. . . . Every person accused as a criminal has a right to be tried according to the law of the land, the fixed

law of the land; and not by the law as a jury may understand it, or choose, from wantonness, or ignorance, or accidental mistake, to interpret it." (*Id.* at p. 1043.)[7]

 In *United States v. Powell, supra*, 469 U.S. 57, the high court reaffirmed the rule that verdicts in a criminal prosecution need not be consistent but, at the same time, the court recognized that jurors are obligated to follow the law. Although the court observed that inconsistent verdicts "present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred," the court held that a new trial is not required because the defendant may have reaped the benefit of jury lenity. (*Id.* at p. 65 [105 S.Ct. at p. 477].) The court explained the rule permitting inconsistent verdicts in criminal cases "as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch." (*Ibid.*; see also *Williams v. Florida* (1970) 399 U.S. 78, 100 [90 S.Ct. 1893, 1905-1906, 26 L.Ed.2d 446] ["The purpose of the jury trial . . . is to prevent oppression by the Government. . . . Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence"].) Repeating the court's phrase in *Dunn v. United States, supra*, 284 U.S. 390, 393-394 [52 S.Ct. 189, 190], that such lenity is "an 'assumption of a power which [the jury has] no right to exercise,' " the court concluded in *Powell*: "The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." (*United States v. Powell, supra*, 469 U.S. at p. 66 [105 S.Ct. at p. 477].) Later in its opinion, in rejecting the contention that the court should attempt to determine the reason for the inconsistent verdicts in each case, the court stated: "Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it." (*Ibid.*)

 In *Standefer v. United States* (1980) 447 U.S. 10 [100 S.Ct. 1999, 64 L.Ed.2d 689], the high court returned to the theme that the procedural disadvantages placed upon the prosecution do not lessen the obligation of jurors to obey the court's instructions, or the expectation that they will do so. The decision in *Standefer* held that a defendant could be convicted of aiding

---

[7]"Today the constitutions of three states—Georgia, Indiana, and Maryland—provide that jurors shall judge questions of law as well as fact. In all three states, however, judicial decisions have essentially nullified the constitutional provisions. The unambiguous rule in other American jurisdictions is that questions of law are for the court to decide. Juries must 'take their law' as the trial judge declares it." (Alschuler & Deiss, *A Brief History of Criminal Jury in the United States* (1994) 61 U.Chi. L.Rev. 867, 911, fns. omitted.)

and abetting the commission of a federal offense even though the named principal had been acquitted of that offense. In rejecting the argument that the prosecution, after the named principal was acquitted, should be estopped from asserting that a crime had been committed, the court examined the nature of criminal prosecutions: "First, in a criminal case, the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, [citation]; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, [citation]; and it cannot secure appellate review where a defendant has been acquitted. [Citation.] [¶] The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of ' "their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." ' [Citations.] It is of course true that verdicts induced by passion and prejudice are not unknown in civil suits. But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect." (*Id.* at pp. 22-23 [100 S.Ct. at p. 2007], fn. omitted.) "This case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' [Citation.]" (*Id.* at p. 25 [100 S.Ct. at pp. 2008-2009].)

California courts long have embraced the position reflected in the numerous United States Supreme Court decisions set out above. Two years before the high court's 1895 decision in *Sparf & Hanson v. United States, supra,* 156 U.S. 51, this court reached the same conclusion: "Of course, a jury, in rendering a general verdict in a criminal case, necessarily has the naked power to decide all the questions arising on the general issue of not guilty; but it only has the right to find the facts, and apply to them the law as given by the court." (*People v. Lem You* (1893) 97 Cal. 224, 228 [32 P. 11], italics omitted, overruled on another ground in *People v. Kobrin* (1995) 11 Cal.4th 416, 427, fn. 7 [45 Cal.Rptr.2d 895, 903 P.2d 1027].)

This has been the law in California since the enactment in 1872 of section 1126, which states: "In a trial for any offense, questions of law are to be decided by the court, and questions of fact by the jury. Although the jury has the power to find a general verdict, which includes questions of law as well

as of fact, they are bound, nevertheless, to receive as law what is laid down as such by the court." (See also Pen. Code, § 1124 ["The Court must decide all questions of law which arise in the course of a trial."]; Evid. Code, § 310, subd. (a) ["All questions of law . . . are to be decided by the court."].) Quoting section 1126, we stated in *In re Stankewitz* (1985) 40 Cal.3d 391, 399 [220 Cal.Rptr. 382, 708 P.2d 1260]: "In our system of justice it is the trial court that determines the law to be applied to the facts of the case, and the jury is 'bound . . . to receive as law what is laid down as such by the court.' [Citation.] 'Of course, it is a fundamental and historic precept of our judicial system that jurors are restricted solely to the determination of *factual* questions and are bound by the law as given them by the court. They are not allowed either to determine what the law *is* or what the law *should be*.' [Citation.]"

The principle that jurors are required to follow the law also is reflected in the decision in *United States v. Dougherty* (D.C. Cir. 1972) 473 F.2d 1113. The court in *Dougherty* acknowledged the existence of jury nullification, observing that "[t]he pages of history shine on instances of the jury's exercise of its prerogative to disregard uncontradicted evidence and instructions of the judge." (*Id.* at p. 1130.) The circuit court, however, rejecting the contention that the jury should be instructed that it properly could disregard the court's instructions, noted that the "so-called right of jury nullification . . . risks the ultimate logic of anarchy." (*Id.* at p. 1133.) The court stated: "An explicit instruction to a jury [sanctioning nullification] conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." (*Id.* at p. 1137.)

Similarly, the court in *United States v. Moylan* (4th Cir. 1969) 417 F.2d 1002, 1006, recognized that a jury has "the undisputed power" "to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence," but rejected the argument that the jury should have been instructed that it had the power to acquit even if the defendants clearly were guilty. The court stated: "However, this is not to say that the jury should be encouraged in their 'lawlessness,' and by clearly stating to the jury that they may disregard the law, telling them that they may decide according to their prejudices or consciences (for there is no check to insure that the judgment is based upon conscience rather than prejudice), we would indeed be negating the rule of law in favor of the rule of lawlessness. This should not be allowed." (*Ibid.*; *United States v. Anderson* (7th Cir. 1983) 716 F.2d 446, 449-450 [following "the accepted view that, while the 'community conscience' verdict is to be accepted as a natural and at times desirable aberration under our system, it is not to be positively sanctioned by instructions . . . which would encourage a jury to acquit 'under any circumstances'

regardless of the applicable law or proven facts"]; *United States v. Washington* (D.C. Cir. 1983) 705 F.2d 489, 494 ["It cannot be gainsaid that juries can abuse their power and return verdicts contrary to the law and instructions of the court, and thus nullify the criminal law, but courts generally have refused to give such an instruction to the jury. . . . *A jury has no more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power."* (Italics added.)].)

California courts are in accord. (*People v. Dillon* (1983) 34 Cal.3d 441, 487-488, fn. 39 [194 Cal.Rptr. 390, 668 P.2d 697]; *People v. Sanchez, supra,* 58 Cal.App.4th 1435, 1444-1445; *People v. Partner* (1986) 180 Cal.App.3d 178, 185-186 [225 Cal.Rptr. 502]; *People v. Gottman* (1976) 64 Cal.App.3d 775, 781 [134 Cal.Rptr. 834].) In *People v. Nichols* (1997) 54 Cal.App.4th 21 [62 Cal.Rptr.2d 433], the defendant was convicted of theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a)) and the jury found that he had suffered two prior convictions. During deliberations, the jury asked whether defendant was subject to the three strikes law. (*People v. Nichols, supra,* 54 Cal.App.4th at p. 24; see §§ 667, subds. (b)-(i), 1170.12.) The court responded that it could not properly answer that question, and reminded the jurors that they could not consider the subject of penalty or punishment. The defendant argued on appeal that the trial court should have told the jury that the defendant was subject to a three strikes sentence, so that the jury could decide whether to exercise its power of jury nullification. The Court of Appeal rejected this argument, observing that the court need not instruct the jury concerning its power to nullify the law and, thus, need not instruct the jury regarding penalty or punishment so as to enable it to exercise that power. (Accord, *State v. McLanahan* (1973) 212 Kan. 208 [510 P.2d 153, 160] ["Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon."]; *Davis v. State* (Miss. 1988) 520 So.2d 493, 494-495 [instructing the jury that it "has a paramount right to acquit an accused person for whatever reason" "would in essence direct juries that they could run amuck"].)

Defendant argues, however, that even if a court need not instruct the jury that it has the power to disregard the law, neither should it instruct the jury to the contrary that it may not nullify the law, nor should the court discharge

a juror who indicates an intention to disobey the court's instructions because of a disagreement with the law. This view was considered and rejected in *People v. Sanchez, supra,* 58 Cal.App.4th 1435.

Sanchez was charged with murder. One of the prosecution's theories was that the alleged crime was first degree felony murder, because the murder was committed during the course of a robbery. During deliberations, the jury sent the court a note asking whether a murder that took place during a robbery automatically was first degree murder, and the court answered, "Yes." The jury also asked, "Can we arrive at a verdict where we find the defendant guilty of robbery/2d degree murder?" (*People v. Sanchez, supra,* 58 Cal.App.4th 1435, 1443.) The court answered "no" and explained the concept of felony murder. The court also reminded the jury of its obligation to "follow the law even if you disagree with it," inviting any juror who was "reluctant to follow the law to tell me, and I'll excuse you from jury service because you're not following the law." (*Id.* at p. 1444.)

On appeal from the resulting judgment of conviction for first degree murder, the defendant maintained the court erred in instructing the jury that it " 'must find appellant guilty of first degree murder and could not nullify what it considered to be an unjust law . . .' and threatening to remove any juror who could not follow the law." (*People v. Sanchez, supra,* 58 Cal.App.4th 1435, 1444.) The Court of Appeal recognized that a jury's power to nullify the law is well established, but rejected the defendant's contention, concluding "the trial court was not required to instruct the jurors on their power of nullification and permit them to disregard the law." (*Id.* at p. 1446, fn. omitted.)

One justice dissented, reasoning that the trial court erred in instructing the jury, in effect, that it lacked the power to nullify the law, and compounded that error by "threatening to punish any juror who could not follow the law by removing him or her from the panel." (*People v. Sanchez, supra,* 58 Cal.App.4th 1435, 1453 (dis. opn. of Johnson, J.).) The dissent agreed that a court should not instruct the jury that it may disregard the law, but concluded that the court's instruction "erroneously told the jurors they did not have the power or right of nullification." (*Id.* at p. 1456 (dis. opn. of Johnson, J.).) The dissent suggested that, instead, the court should have reread the standard instruction (CALJIC No. 1.00) that "directs the jury to decide the case based on the facts and the law as supplied by the court." (*People v. Sanchez, supra,* at p. 1456 (dis. opn. of Johnson, J.).)

The majority in *Sanchez,* relying upon this court's decision in *People v. Dillon, supra,* 34 Cal.3d 441, rejected the dissent's view that the court erred

in instructing the jury that it could not find the defendant guilty of second degree murder if it found that the murder was committed during a robbery. The trial court in *Dillon* had instructed the jury that an unlawful killing that occurs during an attempted robbery is first degree murder under the felony-murder rule. During deliberations, the jury sent the court a note asking whether it could return a verdict of second degree murder or manslaughter even if it found the killing occurred during an attempted robbery. In reply, the court reiterated that a killing committed during an attempted robbery is first degree murder. The jury later found the defendant guilty of first degree murder.

Writing separately on the jury nullification issue before the court in *People v. Dillon, supra*, 34 Cal.3d 441, 490 (conc. opn. of Kaus, J.), Justice Kaus concluded that "when the jury practically begged the court to show it a way by which to avoid a first degree verdict," the court "should have informed the jury of (1) its power to render a verdict more lenient than the facts justify, and (2) its immunity from punishment if it chooses to exercise that power." (*Id.* at p. 491, fn. 2 (conc. opn. of Kaus, J.).) The majority in *Dillon* disagreed with Justice Kaus's suggestion on this point, however, stating: "[I]t cannot seriously be argued that, when asked by the jurors, a trial judge must advise them: 'I have instructed you on the law applicable to this case. Follow it or ignore it, as you choose.' Such advice may achieve pragmatic justice in isolated instances, but we suggest the more likely result is anarchy." (*Id.* at pp. 487-488, fn. 39.)

*People v. Fernandez* (1994) 26 Cal.App.4th 710, 714 [31 Cal.Rptr.2d 677], involved circumstances similar to those in *People v. Sanchez, supra*, 58 Cal.App.4th 1435, and reached the same conclusion. In *Fernandez*, jurors informed the court that they had found the defendant guilty of the charged offense, but asked whether they could return a verdict of guilty of a lesser offense. The court answered in the negative. The Court of Appeal affirmed the resulting judgment of conviction of the charged offense, stating: " 'A juror's duty "includes the obligation to follow the instructions of the court . . . ." ' [Citations.] . . . [T]o give every juror the option of disregarding with impunity any law personally judged to be morally untenable is akin to telling all drivers to drive as fast as they think appropriate without posting a limit as a point of departure. It risks, if not chaos, at least caprice." (*People v. Fernandez, supra*, 26 Cal.App.4th at p. 715.)

Similarly, the court in *U.S. v. Krzyske* (6th Cir. 1988) 836 F.2d 1013, 1021, upheld a jury instruction that stated "there is no such thing as valid jury nullification." The defendant in *Krzyske* was a tax protestor who was prosecuted for failing to file tax returns. The trial court permitted the

defendant to use the term "jury nullification" during argument, prompting the jury, during its deliberations, to ask the court to define that term. The court responded: "There is no such thing as valid jury nullification. Your obligation is to follow the instructions of the Court as to the law given to you. You would violate your oath and the law if you willfully brought in a verdict contrary to the law given you in this case." The court of appeals affirmed the resulting judgment of conviction.[8]

As suggested by the majority in *People v. Sanchez, supra,* 58 Cal.App.4th 1435, it is important not to encourage or glorify the jury's power to disregard the law. While that power has, on some occasions, achieved just results, it also has led to verdicts based upon bigotry and racism.[9] A jury that disregards the law and, instead, reaches a verdict based upon the personal views and beliefs of the jurors violates one of our nation's most basic precepts: that we are "a government of laws and not men." (*Reynolds v. Sims* (1964) 377 U.S. 533, 568 [84 S.Ct. 1362, 1385, 12 L.Ed.2d 506].)

The only case cited by the parties or that we have found that has addressed the specific issue raised in the present case—i.e., whether a trial court may remove a juror who discloses, during jury deliberations, that he or she will not apply the law as instructed by the court—is *U.S. v. Thomas, supra,* 116 F.3d 606, involving a prosecution for violation of federal narcotics laws. In *Thomas,* pursuant to the provisions of rule 23(b) of the Federal Rules of Criminal Procedure (18 U.S.C.) permitting the court to dismiss a juror for "just cause" and have a verdict returned by the remaining 11 jurors, a juror was dismissed during deliberations. The court of appeals held "that—as an obvious violation of a juror's oath and duty—a refusal to apply the law as set forth by the court constitutes grounds for dismissal under Rule 23(b)." (*U.S. v. Thomas, supra,* 116 F.3d at p. 608.) Restating "some basic principles regarding the character of our jury system," the court of appeals concluded:

---

[8]Notwithstanding our discussion of the foregoing cases, we express no view on whether, or under what circumstances, a trial court may or must instruct a jury specifically that it has no *power* to render a verdict contrary to the law or the facts before it, that question not being presented in this case.

[9]Jury nullification includes "acquittals by all-white, southern juries of white defendants who killed, assaulted, or harassed civil rights activists or African Americans generally." (Brown, *Jury Nullification Within the Rule of Law* (1997) 81 Minn. L.Rev. 1149, 1191.) As one federal circuit court has observed: "[A]lthough the early history of our country includes the occasional *Zenger* trial or acquittals in fugitive slave cases, more recent history presents numerous and notorious examples of jurors nullifying—cases that reveal the destructive potential of a practice Professor Randall Kennedy of the Harvard Law School has rightly termed a 'sabotage of justice.' [Citation.] Consider, for example, the two hung juries in the 1964 trials of Byron De La Beckwith in Mississippi for the murder of NAACP field secretary Medgar Evers, or the 1955 acquittal of J.W. Millam and Roy Bryant for the murder of fourteen-year-old Emmett Till, [citation]—shameful examples of how nullification has been used to sanction murder and lynching." (*U.S. v. Thomas* (2d Cir. 1997) 116 F.3d 606, 616.)

"Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court. . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (*Id.* at p. 614.)

The court in *Thomas* added: " 'A jury has no more *"right"* to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.' [Citation.]" (*U.S. v. Thomas, supra,* 116 F.3d 606, 615-616.) Although the court in *Thomas* ultimately concluded that the trial court in that case had erred in dismissing the juror in question, because the record suggested that the juror's views may well have been motivated by doubts about the defendant's guilt rather than by an intent to nullify the law,[10] the *Thomas* opinion left no doubt that when the record does establish that a deliberating juror is unwilling to apply the law as instructed by the court, "a juror's purposeful disregard of the law as set forth in the court's instruction may constitute just cause for that juror's removal under Rule 23(b)." (*Id.* at p. 625.)

 Finally, defendant repeatedly asserts, in several different ways, that the juror removed in the present case did not evidence an intention to nullify the law, because he did not express a disagreement with the law prohibiting

---

[10]On the third day of deliberations in *Thomas*, the district court received a note from a juror stating that, due to Juror No. 5's "predisposed disposition," the jury was unable to reach a verdict. The court interviewed each juror individually. Several jurors stated that Juror No. 5 had disrupted deliberations by "hollering" at his fellow jurors and calling them racists. Two jurors stated that Juror No. 5 had come close to striking a fellow juror. One juror recounted that Juror No. 5 had "pretended to vomit in the bathroom while other jurors were eating lunch outside the bathroom door." (*U.S. v. Thomas, supra,* 116 F.3d 606, 611.) But one juror said the friction among the jurors had been "pretty well ironed out," and another asserted that some jurors were "picking on" Juror No. 5. (*Ibid.*) Some jurors stated that Juror No. 5 favored acquittal because defendants were "his people," and others stated that Juror No. 5 expressed the view that drug dealing was commonplace and that defendant had engaged in drug dealing out of economic necessity. But other jurors recalled that Juror No. 5 had stated that the prosecution's evidence was insufficient or unreliable. In his interview, Juror No. 5 did not state anything suggesting that he was refusing to follow the law. On the contrary, he stated he needed " 'substantive evidence' establishing guilt 'beyond a reasonable doubt' in order to convict." (*Ibid.*) The district court discharged Juror No. 5, finding that he was refusing to convict " 'because of preconceived, fixed, cultural, economic, [or] social . . . reasons that are totally improper and impermissible.' " (*Id.* at p. 612.) The court of appeals in *Thomas* held that the district court abused its discretion in discharging Juror No. 5, stating: "On this record, we cannot say that it is beyond doubt that Juror No. 5's position during deliberations was the result of his defiant unwillingness to apply the law, as opposed to his reservations about the sufficiency of the Government's case against the defendants." (*Id.* at p. 624.)

statutory rape in all applications. Rather, defendant asserts, the removed juror simply concluded the law should not be applied in this case. We need not address whether this purported distinction would make a difference, because we do not agree with defendant's interpretation of the record.

Referring to a note from the jury foreperson, the court asked Juror No. 10 whether it was true that he refused to hear any discussions regarding unlawful sexual intercourse because he "believ[ed] the law to be wrong." Juror No. 10 replied: "Pretty much, yes." The court asked whether the juror was "governed" by defense counsel's statement during argument that "[a] jury may, at times, afford a higher justice by refusing to enforce harsh laws." Again, Juror No. 10 answered, "Yes." The court then asked the juror whether he was "willing to abide by the requirements of your oath?" The juror answered: "I simply cannot see staining a man, a young man, for the rest of his life for what I believe to be a wrong reason." This prompted a brief discussion that ended with the juror stating: "And I'm willing to follow all the rules and regulations on the entire rest of the charges, but on that particular charge, I just feel duty-bound to object." The court then summarized by stating: "So you're not willing then to follow your oath?," to which the juror answered: "That is correct."

In the present case there is ample evidence in the record to support the trial court's finding that Juror No. 10 was unable to perform his duties as a juror. The juror stated that he objected to the law concerning unlawful sexual intercourse and expressly confirmed that he was unwilling to abide by his oath to follow the court's instructions. The juror's inability to perform his duties thus appears in the record " ' "as a demonstrable reality." ' " (*People v. Marshall, supra,* 13 Cal.4th 799, 843.) The trial court acted properly in excusing Juror No. 10 on this basis.

## IV

Jury nullification raises issues that go to the heart of our constitutional form of government. These issues sometimes arise when defendants, as a matter of conscience, choose to violate laws as a means of protest, or to violate laws they view as unjust. Such cases cause us to examine the meaning of the cherished right to trial by jury.

It is striking that the debate over juror nullification remains vigorous after more than a hundred years.[11] But it is equally significant that, during this time, no published authority has restricted a trial court's authority to discharge a juror when the record demonstrates that the juror is unable or unwilling to follow the court's instructions.

[11]See Conrad, Jury Nullification: The Evolution of a Doctrine (1998); Biskupic, *In Jury Rooms, a Form of Civil Protest Grows,* Wash. Post (Feb. 8, 1999) page A1; *The Power of*

"Championing a jury's refusal to apply the law as instructed is inconsistent with the very notion of the rule of law. As the young Abraham Lincoln said in a related context, 'let me not be understood as saying there are no bad laws, or that grievances may not arise for the redress of which no legal provisions have been made. I mean to say no such thing. But I do mean to say that although bad laws, if they exist, should be repealed as soon as possible, still, while they continue in force, for the sake of example, they should be religiously observed.' " (*Ballard v. Uribe, supra,* 41 Cal.3d 564, 600 (conc. & dis. opn. of Bird, C. J.).)

Encouraging a jury to nullify a law it finds unjust or to act as the "conscience of the community" by disregarding the court's instructions may sound lofty, but such unchecked and unreviewable power can lead to verdicts based upon bigotry and racism.[12] Jurors who do not feel bound to follow the law can act capriciously, to the detriment of the accused. In addition to refusing to follow laws they view as unjust, such jurors could choose to disregard instructions mandated by the Legislature not to read media accounts of the trial, not to discuss the case with others, or not to conduct their own investigation by visiting the crime scene. (§ 1122.) The jury might feel free to ignore the presumption of innocence or find the defendant guilty even though some jurors harbor a reasonable doubt. (§§ 1096, 1096a; Evid. Code, §§ 502, 520.) A jury might disregard an instruction not to draw an inference from the exercise of a privilege (Evid. Code, § 913) and assume the defendant must be guilty if he or she chooses not to testify. In a capital case, a juror could vote to impose the death penalty without considering mitigating evidence. (Pen. Code, § 190.3.) Some jurors might decide not to view a defendant's confession with caution or not require corroboration of the testimony of an accomplice. (*People v. Carpenter* (1997) 15 Cal.4th 312, 392 [63 Cal.Rptr.2d 1, 935 P.2d 708]; *People v. Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1]; Pen. Code, § 1111.) A jury even might determine that deliberations are too difficult and decide the defendant's guilt by the flip of a coin. (Pen. Code. § 1181, subd. 4 [verdict may not be decided by lot].)

These are just a few of the many instructions required by the Legislature that a juror might choose to ignore if encouraged to nullify the law. (See also §§ 1120 [juror must declare "any personal knowledge respecting a fact in controversy in a cause"], 1127a, subd. (b) [" 'testimony of an in-custody informant should be viewed with caution and close scrutiny' "], 1127b [jury

*Juries,* Orange County Register (Sept. 8, 1997) page B6; Scheflin & Kelso, *Point Counter Point: Is it Ever Proper for Juries to Ignore or Reinterpret the Law?* (Mar. 1999) Cal. Bar J., pages 14-15, 18.

[12]See *ante,* page 459, footnote 9.

is not bound to accept the testimony of an expert witness], 1127c [a defendant's flight after the commission of a crime "is not sufficient in itself to establish his guilt"], 1127f [testimony of a child], 1128 [jury deliberations]; Evid. Code, §§ 457 [jury must accept facts that have been judicially noticed], 1101 [character evidence]; § 96 [felony for a juror to agree to render a certain verdict or receive information out of court].)

██ Jury nullification is contrary to our ideal of equal justice for all and permits both the prosecution's case and the defendant's fate to depend upon the whims of a particular jury, rather than upon the equal application of settled rules of law. As one commentator has noted: "When jurors enter a verdict in contravention of what the law authorizes and requires, they subvert the rule of law and subject citizens—defendants, witnesses, victims, and everyone affected by criminal justice administration—to power based on the subjective predilections of twelve individuals. They affect the rule of men, not law." (Brown, *Jury Nullification Within the Rule of Law, supra,* 81 Minn. L.Rev. at pp. 1150-1151, fn. omitted.) A nullifying jury is essentially a lawless jury.

██ We reaffirm, therefore, the basic rule that jurors are required to determine the facts and render a verdict in accordance with the court's instructions on the law. A juror who is unable or unwilling to do so is "unable to perform his [or her] duty" as a juror (§ 1089) and may be discharged.

## V

The judgment of the Court of Appeal is affirmed.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Concurring.—I agree with the majority that a juror in a criminal case who votes to convict or acquit based on the juror's own moral views rather than on applicable principles of law should be discharged. I write separately, however, to sound a note of caution about the manner in which a trial court should investigate an allegation of such misconduct.

When a deliberating jury tells the trial court that one of its members refuses to obey the court's instructions on the law, the court faces a delicate and difficult task, because its "duty to dismiss jurors for misconduct comes into conflict with a duty that is equally, if not more, important—safeguarding the secrecy of jury deliberations." (*U.S. v. Thomas* (2d Cir. 1997) 116

F.3d 606, 618.) A juror who votes to convict or acquit for reasons that violate the trial court's instructions on the law commits misconduct. Yet the trial court cannot probe the juror's motivations for fear of compromising the secrecy of the jury's deliberations. (*U.S. v. Brown* (D.C. Cir. 1987) 823 F.2d 591, 596.) To permit trial judges "to conduct intrusive inquiries into . . . the reasoning behind a juror's view of the case, or the particulars of a juror's (likely imperfect) understanding or interpretation of the law as stated by the judge" (*U.S. v. Thomas, supra,* 116 F.3d at p. 620) would violate the secrecy of jury deliberations, a cornerstone of this nation's jurisprudence, and it would "invite trial judges to second-guess and influence the work of the jury" (*ibid.*).

In *People v. Cleveland* (2001) 25 Cal.4th 466 [106 Cal.Rptr.2d 313, 21 P.3d 1225], a companion to this case, this court highlights the dangers of intruding upon the jury's deliberative process: "Jurors may be particularly reluctant to express themselves freely in the jury room if their mental processes are subject to immediate judicial scrutiny. The very act of questioning deliberating jurors about the content of their deliberations could affect those deliberations. The danger is increased if the attorneys for the parties are permitted to question individual jurors in the midst of deliberations." (*Id.* at p. 476.)

Thus, in questioning a juror to determine whether the juror is refusing to follow the trial court's instructions on the law, as alleged by other jurors, a trial court should conduct only a very limited inquiry. The court should caution the juror that it does *not* want to know whether the juror is voting to convict or acquit the defendant, or the reasons for that vote. The court should then state that it wants to know *only* whether the juror is willing to abide by the juror's oath to decide the case " 'according only to the evidence presented . . . and . . . the instructions of the court' " (Code Civ. Proc., § 232, subd. (b)), to which the juror is to respond only with either "yes" or "no."

If the juror's answer is "yes," the trial court should simply order the entire jury to resume deliberations. If the answer is "no," the court should discharge the juror in question. If the juror's answer is equivocal, the trial court may have to inquire further. In doing so, however, the court should be mindful of these words of warning: "Where the duty and authority to prevent defiant disregard of the law or evidence comes into conflict with the principle of secret jury deliberations, we are compelled to err in favor of the lesser of two evils—protecting the secrecy of jury deliberations at the expense of possibly allowing irresponsible juror activity." (*U.S. v. Thomas, supra,* 116 F.3d at p. 623.)

In this case, the trial court's questioning of Juror No. 10, quoted in full by the majority (see maj. opn., *ante,* at pp. 446-447), went beyond the limited

inquiry described above. Rather than asking only whether Juror No. 10 was willing to follow the court's instructions on the law, the court asked questions that were likely to—and did—reveal whether Juror No. 10 was of the view that defendant should be convicted or acquitted of the crime of unlawful sexual intercourse, and the reasons for that view. This unnecessarily broad inquiry may well have infringed upon the secrecy of the jury's deliberations.

Because defendant did not raise this issue in his petition for review, the majority expresses no views on the propriety of the trial court's line of questions. Thus, the majority opinion should not be read as expressing approval of the trial court's overly broad inquiry of Juror No. 10. With that caveat, I concur in the majority opinion.

**WERDEGAR, J.**—I concur entirely in the majority's decision to affirm the judgment of the Court of Appeal. As I explain more fully in my concurring opinion in *People v. Cleveland* (2001) 25 Cal.4th 466, 487 [106 Cal.Rptr.2d 313, 21 P.3d 1225], although we review for abuse of discretion a trial court's determination that good cause exists to discharge a juror, "a stronger evidentiary showing than mere substantial evidence is required to support a trial court's decision to discharge a sitting juror." (*Id.* at p. 488 (conc. opn. of Werdegar, J.).) Instead, a juror's refusal or inability to deliberate or, as here, a juror's inability or unwillingness to perform the duties of a juror (Pen. Code, § 1089), must appear to a demonstrable reality before he or she may be discharged.

Because I agree the evidence shows to a demonstrable reality that Juror No. 10 was unable or unwilling to perform his duties as a juror due to his stated refusal to follow the law, I concur in the majority's opinion.