Filed 10/18/13  P. v. Chandler CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056395 |
| v. | (Super.Ct.No. SWF10002075) |
| MICHAEL EDWARD CHANDLER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.

Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Senior Assistant Attorney General, and A. Natasha Cortina and

Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Michael Edward Chandler guilty of sodomy by force or fear (Pen. Code, § 286, subd. (c)(2)) and simple assault (Pen. Code, § 240). It rejected charges of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), robbery (Pen. Code, § 211), and making a criminal threat (Pen. Code, § 422). It also rejected allegations that he used a deadly weapon in the commission of the sodomy. (Pen. Code, §§ 667.61, subd. (e)(4), 12022, subd. (b)(1).)

As a result, defendant was sentenced to a total of six years in prison, plus the usual fines, fees, and conditions.

Defendant now contends:

1. In light of the fact that the jury rejected the charges of assault with a deadly weapon, making a criminal threat, and robbery, and also rejected the deadly weapon use enhancement, there was insufficient evidence of force or fear to support the sodomy and simple assault convictions.

2. The trial court erred by prohibiting defendant's expert witness from testifying that the victim had a chronic anal fissure.

We find no error. Hence, we will affirm.

# I

## FACTUAL BACKGROUND

Victim Jane Doe[1] worked as a prostitute. She advertised on Craigslist. As of May 2010, she was working out of the Extended Stay Hotel in Temecula. Her room was on the first floor, near the front desk.

On May 15, 2010, around 8:00 or 9:00 p.m., a man phoned her and identified himself as "Jeff." She quoted him her prices. He arranged to meet her. He mentioned that he was driving from Riverside.

"Jeff" arrived at the hotel around 10:00 p.m. Doe let him in a side door and took him back to her room. At trial, she identified him as defendant.

Defendant paid Doe $180 for one hour. She put the money inside a dresser. They did not discuss what particular sex acts she would perform. However, if defendant had asked for anal sex, she would have refused. She had never had anal sex.

Doe started by giving defendant a "[h]and job." He tried to kiss her breasts, but she stopped him; he seemed "irritated." Next, she put a condom on him and gave him oral sex. He asked to orally copulate her, but again she refused. Then they had sexual intercourse, in the missionary position, then with Doe on top, and then from the rear, with Doe on her hands and knees.

---

**1** The trial court ordered that the victim be referred to by this fictitious name. (Pen. Code, § 293.5.)

Defendant "was taking a long time," so Doe "asked him what position does he think he is going to be able to come in . . . ." Defendant responded that he was going to get some warming lubricant out of his pants, which were on the other bed.

When defendant came back, he was holding a box cutter. Doe started to get up, but he pushed her back down. She said, "Oh, my God, what are you doing? What are you doing? Please don't hurt me."

Defendant ordered Doe to turn around and look at the headboard. She tried to push him away. He told her that the box cutter was sharp and would cut her. Nevertheless, she tried to grab it. There was a "struggl[e]," in which Doe got two cuts on her right ring finger.

After getting cut, she complied with defendant's orders. She got on her hands and knees and faced the headboard. Defendant knelt behind her. She saw him take off the condom. He proceeded to sodomize her. She told him it hurt.

Defendant threatened to cut her if she moved. At some point, he "trailed" the box cutter down her spine, to demonstrate how he could cut her.[2] He also threatened to cut her face. Doe wept and said no, "[o]ver and over again the whole time it was happening." However, defendant continued to sodomize her for 10 or 15 minutes, until he ejaculated.

---

[2]     Doe was inconsistent about whether this took place before or during the sodomy.

Defendant wiped his penis with the sheets. He told Doe to keep looking at the headboard. Instead, she ran out the door and into the hallway, naked and screaming, "Help." Defendant chased her and dragged her back into the room by her hair. A clerk at the hotel reception desk heard Doe scream and called 911.

Defendant slammed Doe up against a refrigerator, held a fist up to her face, and threatened to "sock" her. As he was getting dressed, and while holding the box cutter, he said, "You never know when I'm gonna be outside." He threatened to come back and kill her. He took his $180 out of the dresser and left. Doe then realized that her cell phone was missing.

Starting a little after 4:00 a.m., a trained sexual assault nurse examined Doe. She observed the cuts to Doe's right hand. Upon examining Doe's anus, she also observed lacerations at the 12 o'clock position and the 6 o'clock position, as well as some redness at the 9 o'clock position. The laceration at 6 o'clock was bleeding slightly.

The nurse described these injuries as "significant," though not "severe." In her opinion, they were indicative of anal sex. However, she could not say whether the anal sex was consensual or nonconsensual.

The police located defendant through people who had been phoned from the number that "Jeff" had used to phone Doe. DNA from sperm cells found in Doe's anus matched defendant's DNA.

5

In a search pursuant to a warrant, the police found a "razor on a piece of wood," which was either a box cutter or a paint scraper, in a toolbox in defendant's truck. Doe testified that it "looked like" defendant's box cutter.[3] In a photo lineup, she identified defendant.

The only witness for the defense was Dr. Felice Gersh, a gynecologist and general practitioner. She testified that Doe's anal injuries were "superficial." Based on photographs, she could make out only a single "abnormality" — "a little groove-like cut" at 6 o'clock, which could have been caused by consensual or nonconsensual anal sex or even by chronic constipation. She also testified that the cuts to Doe's right hand had curved segments as well as jagged segments and thus could not have been made by a box cutter or a paint scraper.

## II

### THE SUFFICIENCY OF THE EVIDENCE OF FORCE

Defendant contends that, because the jury rejected the charges of assault with a deadly weapon, making a criminal threat, and robbery, and also rejected the deadly weapon use enhancement, there was insufficient evidence of force or fear to support the sodomy and simple assault convictions.

This confuses two wholly distinct issues — insufficiency of the evidence and inconsistency of the verdicts.

---

[3] Doe had told the police that the handle of the box cutter was either burgundy or brown. Apparently the box cutter in defendant's truck was neither.

"'"[R]eview of the sufficiency of the evidence . . . should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient . . . .'" [Citation.]" (*People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 13.)

"A jury in a criminal case may return inconsistent verdicts. [Citations.]" (*People v. Williams* (2001) 25 Cal.4th 441, 449.) "As a general rule, inherently inconsistent verdicts are allowed to stand. [Citations.] For example, 'if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 600.) "[T]he fact that a guilty verdict on one count is inconsistent with an acquittal verdict on another no longer compels reversal if there is substantial evidence to support the conviction. [Citation.]" (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1657.)

Here, for purposes of the sodomy conviction, there was ample evidence of force or fear. Defendant threatened the victim with a box cutter. When she grabbed for it, it cut her. During the act, he threatened to cut her if she moved. The fact that the jury rejected other counts and allegations that were based on the use of a box cutter is simply irrelevant.

We also note that there was ample evidence of simple assault, regardless of whether defendant used a deadly weapon or made a criminal threat. Assault requires "an act likely to result in a touching, however slight, of another in a harmful or offensive manner. [Citation.]" (*People v. Wyatt* (2012) 55 Cal.4th 694, 702.) There was evidence that, when the victim tried to get up, defendant pushed her down. When she ran out of the room and screamed, defendant dragged her back in by her hair. He slammed her up against a refrigerator, held a fist up to her face, and threatened to punch her. The jury's rejection of the other counts was not inconsistent with this evidence.

We therefore conclude that both convictions are supported by substantial evidence.

III

LIMITING THE TESTIMONY OF DEFENDANT'S EXPERT

Defendant contends that the trial court erred by limiting the testimony of his expert witness.

A.      *Additional Factual and Procedural Background.*

Before Dr. Gersh testified, the prosecutor objected to her opinion regarding the cuts on Doe's hand. The trial court therefore had her testify at a hearing pursuant to Evidence Code section 402 (section 402).

On direct, Dr. Gersh testified about her qualifications and about the cuts on Doe's hand. On cross-examination, however, the prosecutor asked, "[W]hat ultimately is your expert opinion about the [victim's] injuries?" Dr. Gersh responded that the victim had "a chronic anal fissure which has been exacerbated by anal intercourse." The fissure was at

8

the 6 o'clock position. She added that she could not tell whether the anal intercourse was consensual or nonconsensual.

The prosecutor then objected to Dr. Gersh's testimony in its entirety on the ground that she was unqualified. The trial court ruled that she was qualified. On its own motion, however, it ruled that she could not testify that "she detects prior anal intercourse . . . ."

Dr. Gersh, however, had not offered any such opinion. Thus, defense counsel responded: "I think there is assumptions being made about the fact that there was a chronic anal fissure. And she can be questioned about that. Just because there is a chronic anal fissure — Dr. Gersh can't testify that that means that [the victim] has engaged in anal intercourse before."[4] The trial court replied, "So I'm not going to let her testify to that. So that solves that problem."

Defense counsel argued, once again, that the trial court was incorrectly assuming that the fissure meant that the victim had engaged in anal intercourse before. He offered to have Dr. Gersh testify that the fissure could have been caused by constipation. In response, the trial court asked why the fissure was relevant. Defense counsel answered, "Because it's there."

---

**4**     The People characterize this as an offer of proof that the chronic anal fissure *was* a sign that the victim had engaged in anal intercourse before. We read it as the exact opposite — defense counsel was arguing that testimony about the chronic anal fissure should be admissible because it did *not* mean that the victim had engaged in anal intercourse before.

9

The trial court ruled that Dr. Gersh could not testify about the chronic anal fissure. It explained that the jury might leap from the word "chronic" to the conclusion that the victim had engaged in anal intercourse repeatedly.

When Dr. Gersh was before the jury, she testified that the only "abnormality" visible in photos of the victim's anus was "a little groove-like cut" at the 6 o'clock position, which could be due to either anal sex or chronic constipation.

B.      *Analysis.*

1.      *Forfeiture.*

In the proceedings below, defense counsel never explained why the fissure was relevant. When asked, he argued that it was relevant just "[b]ecause it's there." Thus, he forfeited any error in excluding the evidence. (Evid. Code, § 354, subd. (a); *People v. Mendoza* (2011) 52 Cal.4th 1056, 1093.)

2.      *Merits.*

In this appeal, defendant is not much clearer about why the fissure was relevant. First, he argues that it was relevant to show that Doe's anal injuries were not due to sodomy. Not so. At the section 402 hearing, Dr. Gersh admitted that sodomy did occur and that it exacerbated the fissure.

Moreover, Dr. Gersh ultimately did testify about the fissure, although she referred to it as a "groove-like cut." She testified that it was the victim's only visible "abnormality," and that it could have been caused by constipation. Thus, in substance

10

(and contrary to her testimony at the section 402 hearing), she did testify that the victim's injuries were not necessarily due to sodomy.

Defendant also argues that the evidence was relevant to show that the penetration was not "against Jane Doe's will." Again, not so. At the section 402 hearing and at trial, Dr. Gersh admitted that there was no way to tell whether the anal intercourse was consensual or nonconsensual.

Defendant may be arguing that the evidence was relevant to show that the penetration was not forceful. However, as already discussed, there was ample evidence that the sodomy was accomplished by force or fear without regard to whether the penetration itself was forceful. Thus, the trial court could reasonably conclude that the evidence had minimal probative value on this issue. Moreover, the trial court could reasonably conclude that the evidence — and especially the word "chronic" — was likely to confuse the jury. Thus, even assuming the evidence was marginally relevant to prove the degree of force used, the trial court had discretion to exclude it under Evidence Code section 352. And finally, once again, Dr. Gersh did ultimately testify that the victim's only visible "abnormality" could have been caused by constipation. Thus, the jury was aware that, in her opinion, there was no physical evidence of any penetration, forceful or otherwise.

11

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____

                                                                                         J.

We concur:

McKINSTER _____
                            Acting P. J.

CODRINGTON _____
                                    J.